Fbanois J. Donovan, J.
TMs is a motion to open a default judgment in a small claim proceeding. The application involves two areas which are of particular importance to small claim litigants.
*928 First, there is the policy of adjourning small claim matters. When this proceeding came on for hearing, the attorney for the defendant corporation did not personally appear. He sent a non-lawyer with a verbal request for an adjournment. The request was to adjourn because the defendant was impleading the Chrysler Corp. as a third-party defendant. The application to adjourn was denied. Since the attorney had not appeared in'court there were only two courses to take: one, to adjourn the case even though the application to adjourn was without merit; or, two, to take an inquest on the default.
Section 1802 of the Uniform District Court Act provides: “ They [the procedures] shall constitute a simple, informal and inexpensive procedure for the prompt determination of such claims in accordance with the rules and principles of substantive law.”
Routine adjournments granted for the mere asking frustrate the purposes of the statute. Litigants take time from work or arrange their personal affairs to appear in court. Those who are diligent should not be penalized by being required to make second or third appearances in court because other litigants have not been diligent. By failing to appear, counsel left the court with no option but to give him something to which he was not entitled or proceed to take the inquest.
There was no merit to the application to adjourn, for the attempted impleader of Chrysler Corp. was improper. Subdivision (i) of section 3840.28 of the Rules of the Nassau County District Court (22 NYCRR 3840.28 [i]) provides that additional defendants are impleaded by the Clerk’s mailing notices of claim. The defendant here issued a formal third-party summons and complaint. The summons was served on Chrysler Corp. in New York City. Section 1801 of the Uniform District Court Act provides that a small claim means a cause of action “ provided that the defendant resides, or has an office for the transaction of business or a regular employment, within the county. ’ ’ Since the Chrysler Corp. does not have an office in the County of Nassau it could not be impleaded in a small claim proceeding.
Assuming that the application to adjourn was properly denied for the foregoing reasons, the court might exercise its discretion to open the default on terms, in the interest of justice, if the defendant established a meritorious defense. The claim is set forth in detail in the minutes of the inquest which were furnished for use on this motion. The claim is for repairs to the transmission of a car covered by the standard Chrysler new car warranty. Claimant stated that the transmission failed and she spoke to *929 Mr. Cohen about getting service under the warranty. She states that Mr. Cohen told her she had no warranty. She quotes him as having said, “ I could not possibly have a five year warranty, there is no such thing; we can’t do anything about it; that is it”.
She then had the car repaired at Lee Myles Transmission and went back to Mr. Cohen who told her, “ You can write to Detroit ’ ’. Those statements are not denied in any of the affidavits submitted by the defendant on this motion. We must therefore take them as true.
This brings us to the second area of inquiry: the relationship of consumer, dealer and manufacturer under the typical new car warranty. We take note from the cases coming before our court of the difficulty of the consumer who is denied services, subjected to unreasonable delay or unsatisfactory work by a new car dealer. If the dealer does not perform under the warranty the consumer must take the matter up with the manufacturer. If we adopt the view that this is the only recourse for the consumer we relegate him to letter writing for relief. This can be a painful experience. Recourse to the manufacturer is difficult if the small claims proceeding cannot be used. It cannot be used in cases such as this where the manufacturer does not maintain an office wtihin this county.
In substance, the manufacturer warrants the transmission for five years or 50,000 miles, whichever occurs first. The warranty is evidenced by a document delivered to the purchaser by the dealer. The warranty excludes any other warranty in connection with the sale.
Functionally, the warranty puts the consumer at the mercy of the dealer. The consumer is required to take his car to the selling dealer for service under the warranty unless he has ceased to do business, but in any event, the work must be done by a Chrysler dealer. The warranty does not place any express obligation on the dealer.
Despite the almost universal use of this or a similar warranty in the millions of new car sales each year, research reveals no reported case spelling out the dealer’s obligation, if any, to the consumer.
There are three parties to this sale and warranty. All three contemplated that service might be required under the warranty and that the consumer would be required to seek that service from the dealer. Unless we imply an obligation on the dealer to render that service, the whole purpose of the warranty will be frustrated. Under such circumstances the law will imply the required promise (Fair Pavilions v. First Nat. City Bank, 19 *930 N Y 2d 512, 518; Price v. Spielman Motor Sales Co., 261 App. Div. 626).
It is then implied that the dealer will do that which is required in any service contract:
1. That he will perform the work in a good, workmanlike fashion. (McFall v. Compagnie Maritime Belge [Lloyd Royal] S. A., 304 N. Y. 314, 330.)
2. That he will do the work without unreasonable delay. (City of New York v. New York Cent. R. R. Co., 275 N. Y. 287.)
The dealer is the agent selected by the manufacturer to perform under the warranty. Since the dealer receives a financial reward from the consumer, he is primarily liable for his failure to perform (Dahlstrom v. Gemunder, 198 N. Y. 449.) This conclusion seems to flow from the general principle of contract law. However, such a conclusion is mandated by the paramount public interest in the service contract between the dealer and the consumer. Section 197-a of the General Business Law gives special protection to automobile dealers in the matter of the renewal of their contracts with manufacturers and distributors. This section was enacted by section 3 of chapter 582 of the Laws of 1970. The legislative finding and declaration of purpose set forth in section 1 of chapter 582 of the Laws of 1970 reads as follows: ‘ ‘ The legislature hereby finds and declares that the sale of motor vehicles to the public in the state under the franchise system includes more than the mere transfer of title being a continuing obligation of the manufacturer, distributor and dealer to the buying public affecting the public interest; that the termination or failure of the established relationship between the manufacturer, distributor and dealer without cause or good faith denies to the general buying public its rights to availability of continuing post-sale mechanical and operational service and precludes the relationship, expected and implied at the time of sale, between the buyer and the seller necessary to insure safe operating condition of the vehicle.”
This special interest of the State of New York permeates the warranty relationship of dealer and consumer (cf. Wilson v. Manhasset Ford, 27 Misc 2d 154; Dato v. Vatland, 36 Misc 2d 636).
The complete repudiation by the dealer in this case makes him liable to the claimant. It is difficult to see how Chrysler Corp. would be liable over in the absence of some special contract between Chrysler and the dealer. No such contract is mentioned in the defendant’s papers. Under the warranty here the defendant undertook to perform the warranty on behalf of *931 Chrysler as its agent. He has violated that obligation. This should bar him in any attempt to recover as against Chrysler.
The defense is without merit and the motion to open the default and vacate the judgment is denied.