OPINION OF THE COURT
Joseph Goldstein, J.
Plaintiff, a purchaser of a new Pontiac automobile from the defendant dealer, sues for damages arising from an alleged breach of warranty, claiming that the new automobile which he purchased was not suitable for the purposes for which it was intended, nor was it in a safe and merchantable condition when delivered by the defendant dealer to plaintiff. The defendant dealer not only denies plaintiff’s claim, saying that the car was of average condition, but also impleads as a third-party defendant, General Motors Corporation, the manufacturer of the vehicle.
Someone once said that “what is good for General Motors is good for the country.” I dare say that after hearing the testimony in this case, the accuracy of such a statement *825 comes into serious question. If it were to be believed, it might well be that the purchaser of any new automobile would be required to be satisfied with what might be referred to as a “modicum of mediocrity.”
Plaintiff’s testimony reflects acceptance of a new Pontiac Sunbird automobile and shortly thereafter a series of telephone calls and visits to the dealer from whom he purchased the automobile, complaining of leaking oils and other fluids, low brake fluid levels, inappropriate spaces where the doors met the body of the vehicle, spaces which permitted air and water to enter the. vehicle, and other complaints as itemized in plaintiff’s bill of particulars.
While it is true that plaintiff is perhaps by training and trade more particular about the manner in which the various parts of the automobile fit together (plaintiff being a cabinetmaker by craft), certainly neither plaintiff nor any other person in a similar position should be required to accept a new vehicle which is unfit or unsafe for use on the roads, or instills in the buyer the fear that the vehicle is unfit or unsafe.
The courts of this State have clearly held that if plaintiff had been a party injured as a result of the defective brake system alleged in the subject vehicle by plaintiff and if that condition could be shown to have existed at the time of delivery of the vehicle, plaintiff would be entitled to recover for whatever personal injuries he might have sustained. This would be true even though plaintiff was not the purchaser of the vehicle but a party totally unconnected without contractual privity. (Codling v Paglia, 32 NY2d 330.) The court held (pp 339-341),
“ The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to old and out-moded technical rules of law which, if observed, might be productive of great injustice. The manufacturer * * * unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality and, in fact, it is so purchased and used. Having invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when the expected use leads to *826 injury and loss, by claiming that he made no contract directly with the user.’ * * *
“In today’s world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. Once floated on the market, many articles in a very real practical sense defy detection of defect, except possibly in the hands of an expert after laborious and perhaps even destructive disassembly.
“Justice and equity would dictate the apportionment across the system of all related costs — of production, of distribution, of postdistribution liability.” (See, also, Randy Knitwear v American Cyanamid Co., 11 NY2d 5.)
The Court of Appeals continued by saying (p 341), “Pressures will converge on the manufacturer, however, who alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, but safe products.”
In the case before this court, fortunately the motor vehicle purchased by the plaintiff was not involved in a situation causing physical or personal injury either to plaintiff or to a third-party nonuser.
In fairness to the manufacturer, according to the joint testimony of the plaintiff and the defendant dealer, General Motors sent representatives to the dealership, examined plaintiff’s automobile, and agreed, though reluctantly, to modification of various structural parts such as doors and frames. These modifications were intended to satisfy some of plaintiff’s objections and complaints regarding the automobile.
Plaintiff’s complaints, with the exception of the structural fit of the car door to the body, essentially deal with the plaintiff’s relationship with the defendant dealer and the manner in which plaintiff’s complaints were dealt with. It should be noted that plaintiff at no time sued the manufacturer and that the only reason the manufacturer is involved in this litigation at all is that the dealer impleaded General Motors. By doing so, it was the obligation of the dealer to prove its claim against the manufacturer. In the opinion of this court, the dealer, who did not *827 offer in evidence any contract other than the warranty, has failed to show that General Motors breached any contractual obligation it had with the dealer nor that it had failed to sustain its obligations to the purchaser under the warranty, and in that regard the third-party complaint is dismissed.
Plaintiff on numerous occasions, starting almost immediately after he purchased the automobile, complained to the defendant dealer regarding the various leaks and other enunciated complaints about his automobile. Perhaps from the point of view of safety, his most consistent complaint dealt with “low brakes” and the situation in which he found himself wherein he was required to constantly replace brake fluid.
Plaintiff’s description of his visits to the dealer for service of his various complaints are descriptions which many new-car buyers can empathize with. Throughout plaintiff’s testimony and cross-examination, plaintiff’s frustration regarding the service performed by the defendant dealer “glows ever brighter as this Court searches for the truth.”
Interestingly enough, the dealer, in addition to presenting the purchaser with keys to his new automobile, presents him with a written warranty. The terms of the warranty require the purchaser to obtain warranty service to be performed wherever possible by an authorized Pontiac dealer. In the case before this court, with one exception, all of the work was done by the defendant dealer who sold the car to the purchaser plaintiff. The warranty, however, though printed in legible type of reasonable size with drawings and illustrations, places no express obligation on the dealer as regards its relationship to the purchaser of the automobile.
The parties to this sale and its accompanying warranty are clearly the dealer, the manufacturer, and the purchaser. Apparently there is some “quiet arrangement” between the dealer and the manufacturer to which the purchaser is somehow a third-party beneficiary but is not aware of the benefits to which he may be entitled except in an extremely general way.
This plaintiff, however, chose not to sue the manufacturer, and after reviewing plaintiff’s testimony and that of *828 the defendant dealer’s representatives, it is understandable that plaintiff’s grief finds its source at the hands of the defendant dealer. The written warranty which was offered in evidence tells the purchaser what he may expect from the manufacturer provided the purchaser bring his automobile to the manufacturer’s dealer but does not set forth in any express terms what the purchaser may expect from the dealer itself. Under these circumstances, the court must imply an obligation of the dealer to render the required service and to perform it in a good, workman-like fashion without unreasonable delay, or else the entire function of the warranty will be a nullity and the purchaser’s frustration will be very real indeed.
It is the finding of this court, after reviewing the testimony, that the reasonable cost of repairs to plaintiff’s automobile should not exceed $1,200 and the court finds judgment for the plaintiff against the defendant, Benjamin Pontiac, Inc., in that sum.
As regards the action between the third-party plaintiff, Benjamin Pontiac, Inc., and General Motors Corporation as third-party defendant, this court finds that the third-party plaintiff has not sustained its burden of proof in any regard.