■ CARBO INDUSTRIES, INC., et al., Appellants, v BECKER CHEVROLET, INC., et al., Respondents.—In an action, *inter alia*, to recover damages for breach of warranty, plaintiffs appeal from a judgment of the Supreme Court, Nassau County (Kelly, J.), entered April 19, 1984, which dismissed the complaint.

Judgment modified, on the law, by reinstating the first and second causes of action of the complaint and by severing the third cause of action sounding in fraud. As so modified, judgment affirmed, and new trial granted on the first two causes of action, with costs to abide the event.

This action was brought to recover economic damages allegedly suffered as the result of a certain engine defect in a 1981 Chevrolet Impala automobile. The complaint contained three causes of action sounding, *inter alia*, in breach of express and implied warranties and fraud by the vehicle's manufacturer and seller. This case is before us on an appeal from a judgment dismissing the complaint after the close of plaintiffs' evidence at trial.

The evidence established that the car was manufactured by defendant General Motors Corporation (General Motors), which delivered the car to the dealer, defendant Becker Chevrolet, Inc. (Becker) on December 17, 1980. On December 31,

1980, Becker sold and delivered the car to the retail purchaser, plaintiff Kar Shell Leasing Corp. (Kar Shell). The car was expressly warranted by the Chevrolet Motor Division of General Motors against defects in materials and workmanship for a period of 12 months from the date on which the car was first delivered or put in use, or 12,000 miles, whichever came first. The warranty provided that repairs qualifying thereunder would be performed by a Chevrolet dealer, but it specifically recommended that warranty service be performed by the dealership from which the car was purchased. The warranty papers contained a space for the dealer's imprint, and Becker's name and address were printed therein. However, Becker's invoice to Kar Shell contained the following disclaimer: "Any warranties on the products sold hereby are those made by the manufacturer. The seller hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products". In addition, the invoice contained the following statement: "Always Bring Your Car Here For Factory Authorized Service".

On January 15, 1981, plaintiff Kar Shell leased and delivered the car to plaintiff Carbo Industries, Inc. (Carbo). In December 1981, Carbo encountered mechanical problems with the car. The car was returned to Becker for repairs several times, but those repairs were unsuccessful, and it was eventually determined that the engine had seized. However, defendants refused to make the necessary repairs to the engine under the warranty, claiming that plaintiffs' failure to make necessary oil changes had caused the damage. At the trial, plaintiff Carbo offered proof that the oil had actually been changed more frequently than suggested by the manufacturer.

Plaintiffs eventually had the car towed back to their facilities, and caused a secondhand engine to be placed therein. However, Trial Term refused to permit plaintiffs to introduce a bill showing the cost of the replacement engine, ruling that plaintiffs had not given defendants the requisite notice (see, CPLR 4533-a). Plaintiffs were permitted to offer evidence that Carbo had continued to pay the lease charge of $240 per month, plus tax, although Carbo had not had use of the car for approximately seven months. Also, Kar Shell's president testified that his company had suffered damages because Carbo had stopped ordering Chevrolet products as a result of this transaction, and Kar Shell had taken a loss of $1,800 on

another vehicle it had purchased for the purpose of leasing to Carbo.

After the close of plaintiffs' evidence at trial, defendants moved to dismiss the complaint on several grounds, including, *inter alia:* (1) that defendant Becker had disclaimed all warranties; (2) that the car's defect had not arisen within the warranty period; (3) that plaintiffs' damages were consequential and, therefore, not compensable; (4) that plaintiffs had failed to prove that the engine breakdown was the fault of defendants; and (5) that plaintiffs had failed to prove fraud. The trial court granted the motion, without stating its reasons for doing so. We have reviewed the record and conclude that plaintiffs adduced sufficient evidence regarding their breach of warranty claims to have survived the motion to dismiss at the close of their case.

First, the evidence does not support the claim of defendants that the defect in the subject automobile arose after the expiration of the 12-month term of the manufacturer's express warranty. That warranty provided that its effective term would "begin on the date the car is first delivered or put in use". The evidence established that while Becker delivered the car to Kar Shell on December 31, 1980, it was not transferred to Carbo until January 15, 1981. Plaintiffs offered testimony that the defect arose in mid-December of 1981 or, perhaps, earlier, which was within 12 months from the date on which the seller delivered the car. Moreover, defendant Becker's own bill reflects that it replaced the starter and checked the engine on January 12, 1982, which was within 12 months from the date on which the car was leased to Carbo and first put in use. Thus, under either view of the evidence, and bearing in mind that any ambiguity in the language of the warranty must be resolved against those who drafted it (*Rentaways, Inc. v O'-Neill Milk & Cream Co.,* 308 NY 342, 348; *Interested Underwriters v Ducor's, Inc.,* 103 AD2d 76, 79), we conclude that the proffered defense of expiration of the warranty period is not available to defendants in this case.

Second, although defendant Becker's invoice purported to disclaim any liability under the manufacturer's warranty, as well as any express or implied warranties of its own, it does not follow that Becker must be absolved, as a matter of law, from all liability for the damages suffered by plaintiffs. Generally, an automobile dealer who makes repairs on behalf of the manufacturer, pursuant to the manufacturer's warranty, incurs no warranty liability to the purchaser, unless the dealer specifically adopts the manufacturer's warranty or gives a

separate warranty of its own (*see, e.g., Kure v Chevrolet Motor Div.,* 581 P2d 603 [Wyo]; *Courtesy Ford Sales v Farrior,* 298 So 2d 26 [Ala]; Ann., Construction and Effect of Standard New Motor Vehicle Warranty, 99 ALR2d 1419). In contrast, some courts have held that although the written manufacturer's warranty presented by the dealer to the purchaser at the time of the sale places no express obligation on the dealer itself, there is an implied obligation upon the dealer, derived from the manufacturer's warranty, to render service under that warranty in a workmanlike fashion and without unreasonable delay (*Mincone v Benjamin Pontiac,* 115 Misc 2d 824, *affd* 123 Misc 2d 779; *Breen v Cohen Auto. Co.,* 75 Misc 2d 927).

We need not pass upon the existence of such an obligation in the instant case, however, because there was evidence demonstrating that the dealer provided certain warranties of its own. Although an automobile dealer may, by statute, disclaim both express and implied warranties (Uniform Commercial Code § 2-316), the implied warranty of merchantability (Uniform Commercial Code § 2-314) may only be disclaimed by use of language mentioning the word "merchantability" and, in the case of a writing, such language must be conspicuous (Uniform Commercial Code § 2-316 [2]; *Zicari v Harris Co.,* 33 AD2d 17, *lv denied* 26 NY2d 610). The question of whether a particular disclaimer is conspicuous, and hence valid, is a question of law to be determined by the court (Uniform Commercial Code § 1-201 [10]; *Jaffe Assoc. v Bilsco Auto. Serv.,* 89 AD2d 785, *affd* 58 NY2d 993; *Velez v Craine & Clarke Lbr. Corp.,* 41 AD2d 747; *revd on other grounds* 33 NY2d 117). Therefore, to the extent that the trial court's dismissal of this case was predicated on the purported disclaimer of implied warranties made by Becker in its invoice to Kar Shell, it was error to have done so without first determining whether that disclaimer was conspicuous.

Moreover, the evidence established that defendant Becker did, on several occasions, perform repairs on the subject vehicle. In each case, Becker issued a bill to Kar Shell upon which was printed the following:

"LIMITED EXPRESS WARRANTY

"These repairs are covered by a limited express warranty, labor 30 days and parts 90 days or 4,000 miles, whichever comes first. Seller hereby limits implied warranties to the same period". Based on the foregoing language, the trier of fact could have found that the proximate cause of the loss suffered by plaintiffs was, in whole or in part, a breach by

defendant Becker, the dealer, of its warranty to properly service or make proper repairs (*Jackson v Melvy,* 56 AD2d 836).

Third, with respect to damages, the cost of replacing the defective engine with a working secondhand engine could have been found to be a reasonable cost in rendering the car usable (Uniform Commercial Code § 2-714 [1], [2]; *City of New York v Pullman, Inc.,* 662 F2d 910, 918, *cert denied sub nom. Rockwell Intl. Corp. v City of New York,* 454 US 1164), and it was error to exclude from evidence the invoice for the purchase of that engine. This was not a bill for repairs or services rendered which required the testimony of a third person, and CPLR 4533-a was, therefore, not applicable (*see,* McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, Supp Pamph 1964-1984, CPLR 4533-a, pp 362-363). Also, plaintiff Carbo's monthly lease payments during the period that the car was unusable was compensable, representing the difference between the car's value if it had functioned as warranted (the monthly rental charge) and its actual value when unusable (none) (Uniform Commercial Code § 2-714 [2]). The towing charges and other charges incurred by plaintiffs in diagnosing the problem with the car could have been found to constitute compensable incidental damages (*cf.* Uniform Commercial Code § 2-715 [1], [2]). Plaintiff Kar Shell's loss due to its client's cancellation of an order for an additional Chevrolet motor vehicle, however, constituted consequential damages (Uniform Commercial Code § 2-715 [2]), which were excluded from the manufacturer's written warranty, but which might have been found to be recoverable under one or more of the warranties found to have been given by the dealer.

Fourth, the defense of lack of privity applies in this case only to the extent that it precludes recovery by plaintiffs of economic losses under the manufacturer's implied warranties, if any (*Jaffe Assoc. v Bilsco Auto. Serv.,* 89 AD2d 785, *affd* 58 NY2d 993, *supra; Miller v General Motors Corp.,* 99 AD2d 454, *affd* 64 NY2d 1081; *Hole v General Motors Corp.,* 83 AD2d 715). However, under the facts of this case, we do not view the absence of a direct contractual relationship between plaintiff Carbo and the manufacturer and seller of the subject motor vehicle as a bar to recovery by Carbo. Defendant Becker sold the car to Kar Shell with knowledge that Kar Shell was in the business of leasing automobiles. As the lessee of the car, Carbo's status was very different from that of a remote successive purchaser further along the distributive chain. Carbo and plaintiff Kar Shell, the actual purchaser, should

properly be viewed as a single unit for purposes of avoiding the application of the doctrine of privity, because both had identical interests and acted together in dealing with defendants in the attempts to remedy the alleged defect in the car. Further, both parties allegedly incurred expenses and suffered losses as a result of that defect. Thus, Carbo is entitled to recover for such of its damages as are proven to have been caused by the manufacturer's breach of its express warranties and the dealer's breach of such express and implied warranties as are found to have been made.

Finally, plaintiffs presented no evidence in support of their cause of action sounding in fraud and, accordingly, that cause of action was properly dismissed. Mangano, J. P., Gibbons, Bracken and Niehoff, JJ., concur.