Defendant Liberty Truck Sales, Inc. ("Liberty"), appeals a judgment on a jury verdict in the amount of $80,296 in favor of plaintiff Lynn Kimbrel. As an alternative to reversing, Liberty asks us to apply the remedy of remittitur to this verdict. We affirm conditionally.
The facts necessary to an understanding of this case are as follows:
Kimbrel, a professional truck driver, purchased a new Freightliner truck from Liberty *Page 1380 
in November 1981. Associated with the sale of this truck, Kimbrel and Liberty executed a "Retail Installment Contract — Security Agreement" ("the Contract"), which provides for the following:
 1) The total cash purchase price of the truck was $69,500.
 2) A down payment of $3,000 was to be made by Kimbrel.
 3) A trade-in allowance of $7,700 was to be credited by Liberty to Kimbrel's account relating to Kimbrel's old truck.
 4) Kimbrel was to make monthly payments of $1,426 until the balance of the debt was satisfied.
The contract further provided:
 "LIMITATION OF WARRANTY: Seller makes no warranties as to the property, express, implied or implied by law except the manufacturer's standard vehicle warranty, which is incorporated herein by reference, and seller specifically disclaims any implied warranty of merchantability or fitness for a particular purpose and any liability for consequential damages."
The "Manufacturer's Standard Warranty" ("the Warranty") provided for the following:
"Limited Warranty and Warranty Disclaimer
 "The Seller warrants to Purchaser that each new Freightliner truck (except for certain components described elsewhere in this Book) will be as specified in Purchaser's order and will be free from defects in material and workmanship which appear under normal use and service within twelve (12) months from the date of delivery for first use, or before the truck has been driven one hundred thousand (100,000) miles, whichever occurs first, unless a different time or mileage limit is expressly stated with respect to any particular part or component in this Book. If Seller receives notice of any failure to comply with specifications or of defects in material or workmanship within twelve (12) months from the date of delivery for first use, or before the truck has been driven one hundred thousand (100,000) miles, whichever occurs first, or for particular components within the different time or mileage limit with respect to such components stated in this Book, and the Purchaser, at its expense, promptly returns the truck or component to the Seller or to an authorized Freightliner Sales Outlet for inspection, Seller's sole obligation shall be the repair or replacement, at Seller's option, of any defective component or part thereof in accordance with this Book. Such repair or replacement shall be without cost to Purchaser when performed within the time and mileage limits, whichever occurs first, for which Purchaser's share of parts and labor is shown as zero percent (0%) on Tables 1 to 12 of this Book.THEREAFTER PURCHASER MUST PAY FOR PURCHASER'S SHARE OF ESTABLISHED COST FOR PARTS AND LABOR AS DETERMINED FROM TABLES 1 TO 12 OF THIS BOOK IN ACCORDANCE WITH THE TIME AND MILEAGE LIMITS STATED IN SUCH TABLES. ON EXPIRATION OF SELLER'S OBLIGATION TO SHARE IN THE COSTS FOR PARTS AND LABOR AS DETERMINED FROM TABLES 1 TO 12 OF THIS BOOK IN ACCORDANCE WITH THE TIME AND MILEAGE LIMITS STATED IN SUCH TABLES, ALL LIABILITY OF SELLER TO PURCHASER SHALL TERMINATE. The entire truck and every component is covered by Table 1 unless it is a component expressly covered by Tables 2 to 12, EXCEPT FOR ENGINES, TIRES AND TUBES WHICH ARE NOT COVERED BY SELLER'S WARRANTY."
The Warranty further provided:
 "Seller's liability on any claim of any kind, including claims based on warranty, expressed or implied, contract, negligence or any other theories including, but not limited to, strict liability, for any loss or damage arising out of, connected with, or resulting from this Agreement, or from the performance or breach thereof, or from the manufacture, sale, delivery, service, repair or use of any truck covered by or furnished under this Agreement shall not exceed the price to Purchaser allocable to the part of such *Page 1381 
truck which gives rise to the claim and in no event shall it exceed the sale price of the truck. IN NO EVENT SHALL SELLER BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES; INCLUDING, BUT NOT LIMITED TO INJURIES TO PERSONS OR DAMAGE TO PROPERTY, LOSS OF PROFITS OR ANTICIPATED PROFITS, OR LOSS OF TRUCK USE."
Certain devices and conditions were excluded from the purview of the Warranty:
"ITEMS EXCLUDED FROM WARRANTY
"Your Warranty Does Not Include These Items:
 "To better understand our warranty, the following is a description of some conditions which are not covered by this warranty policy.
 "Normal Maintenance and Replacement Services: Engine tune-up and other maintenance inspections may require or suggest adjustment, repair or replacement of valves, injectors, fuel systems, filter, (fuel, air, oil, and water), clutch lining, clutch brake, brake lining, light bulbs, wiper arms and blades, and upholstery which are regular maintenance and replacement service and are not covered by the warranty.
 "Front Steering Axle Alignment and Tire Balancing: Since severe road shocks or tire growth can disturb front end alignment and wheel balance and can cause body parts to loosen, the necessary adjustments to correct these conditions are considered normal maintenance items.
 "Tires: Appropriate adjustments on original tires are provided by the tire manufacturer.
 "Clutch Adjustment: Clutches are at the mercy of the driver and your operation; periodic adjustments may be required depending upon the user's operational requirements.
 "Unusual Conditions: Such as vibration, squeaks, unusual noises and rattles can develop during the early shakedown trips of the truck, up to 20,000 miles but no later than 90 days after delivery, and the necessary adjustments will be made without charge. Such adjustments after this period are usually the result of use and, therefore, are not warranty items.
 "Other: Without limitation of the section on 'Limitation of Seller's Liability,' some examples of items for which Seller is not responsible are: injuries to persons or property, traveling expenses, road calls, towing charges, accident repairs, loss of revenue, loss of perishable load, profits, anticipated profits, and loss of truck use."
Kimbrel took possession of the truck on the same day the Contract was executed, and he retained possession of the truck for approximately 45 days. During this period, the truck required service on four separate occasions for factory defects and part malfunctions, which kept the truck out of service approximately 13 days.
Kimbrel filed suit, alleging breach of the manufacturer's standard warranty; he named as defendants Liberty, Freightliner Credit Corporation, and Caterpillar Tractor Corporation. Both Freightliner Credit Corporation and Caterpiller Tractor Corporation were dismissed. During the trial, Kimbrel presented testimony that he had lost approximately $3,500 as a result of the repairs. Kimbrel did not make a payment to Freightliner Credit Corporation during the 45-day period during which he retained possession of the truck, and, consequently, the truck was repossessed while at Liberty for repairs.
Kimbrel testified that he was informed by someone at Liberty that his truck had been repaired and, in response, he and a witness — Mr. Merk Black — went to Liberty, where they inspected the truck and found that the repairs had not been completed. He further testified that he and Mr. Black left Liberty without asking for or receiving any explanation from the employees or officials of Liberty. The truck was repossessed that same day.
Approximately ten days after repossession, Mr. Kimbrel told his psychiatrist, Dr. Stephens, that he was adversely affected by stress caused in part by the repossession of the truck. Kimbrel was hospitalized for a mental condition in 1986, which *Page 1382 
he alleges was caused by the repossession of the truck. Dr. Stephens testified that Kimbrel had had a history of mental disease and that it had required hospitalization on several occasions. Dr. Stephens could not testify with any degree of medical certainty that the 1982 truck repossession caused Kimbrel's 1986 hospitalization for his mental condition. Kimbrel, at the time of the trial, was a patient in the psychiatric ward of the Veterans' Administration Hospital in Tuscaloosa, Alabama. Kimbrel's testimony was presented via deposition.
We address two issues in this appeal:
 1) Did Liberty adopt the Manufacturer's Standard Warranty?
 2) Did the Manufacturer's Standard Warranty fail of its essential purposes?
 I.
Liberty takes the position that it did not adopt the warranty contained in the Owner's Warranty Information Book, and contends that the "Limitation of Warranty" section of the contract served only to give notice of an express warranty by the manufacturer and is not an express warranty of Liberty; that section reads as follows:
 "LIMITATION OF WARRANTY: Seller makes no warranties as to the property, express, implied or implied by law except the manufacturer's standard vehicle warranty, which is incorporated herein by reference. And Seller specifically disclaims any implied warranty of merchantability or fitness for a particular purpose and any liability for consequential damages."
Liberty refers us to Gilliam v. Indiana National Bank,337 So.2d 352 (Ala.Civ.App. 1976), in which the Court of Civil Appeals held that a clause in a contract for the sale of a mobile home merely gave notice of the manufacturer's standard warranty and did not indicate adoption of it by the seller. That clause read as follows:
 "It is mutually agreed that there are no warranties, either expressed or implied, made by either the seller or the manufacturer on the trailer, mobile home, or the parts furnished hereunder, except as follows: On new units the manufacturer's warranty for the particularly described mobile home or trailer will apply, together with such other separate and individual warranties of the various makers of the accessories and equipment furnished. Each individual warranty will be for a duration of time, and will cover such usage as is particularly outlined in the separate manufacturer's own guaranty, and to which the buyer is directed." (Emphasis added.)
Kimbrel counters by referring us to the "Purchase Agreement and Acknowledgment," in which reference is made to the expiration of the warranty period. He also directs our attention to paragraph 10 of that Purchase Agreement and Acknowledgment, which states:
 "This writing (including by reference the provisions set out in the Owner's Warranty Information Book) shall constitute the entire agreement between the Purchaser and Seller and no understanding or obligations not herein or in the Owner's Warranty Information Book expressly set forth are binding upon the Purchaser and Seller."
Finally, Kimbrel directs our attention to the "Limitation of Warranty" section of the "Retail Installment Contract — Security Agreement," in which the Seller incorporates by reference the Manufacturer's Standard Warranty and further disclaims any implied warranties of merchantability and fitness for a particular purpose and any liability for consequential damages. Kimbrel contends that Liberty did much more than give notice of the Manufacturer's Standard Warranty — that Liberty adopted the warranty through its repeated references to it.
Kimbrel's argument is persuasive on this issue. A review of the exhibits in this case reveals that Liberty refers to the "Manufacturer's Standard Warranty" contained in the "Owner's Warranty Information Book" on no fewer than four occasions in the "Purchase Agreement and Acknowledgment" and the "Retail Installment Contract — Security Agreement" and that Liberty *Page 1383 
specifically incorporates by reference the warranty provisions stated in the "Owner's Warranty Information Book" into the "Purchase Agreement and Acknowledgment". The record reveals that Liberty repaired Kimbrel's truck pursuant to this warranty on three separate occasions. The facts of this case are similar to those of General Motors Corp. v. Earnest, 279 Ala. 299,184 So.2d 811 (1966), in which the Court held that an automobile dealer had adopted a General Motors warranty because it had repaired the purchaser's automobile pursuant to that warranty. Furthermore,
 "[a] dealer who is the owner of a manufactured article, but represents himself as the manufacturer's agent and uses a form of sale contract containing warranties on behalf of the manufacturer, is liable on such warranties, having assumed them."
77 C.J.S. Sales, § 308 at 1134 (1964). We, therefore, hold that Liberty adopted the Manufacturer's Standard Warranty contained in the Owner's Warranty Information Book.
 II.
Turning our attention to the second issue in this case, we hold that the Manufacturer's Standard Warranty, as adopted by Liberty, was honored by Liberty but that it failed of its essential purpose.
Code of Alabama 1975, § 7-2-719, is the applicable statutory authority. It states:
"Contractual modification or limitation of remedy.
 "(1) Subject to the provisions of subsections (2) and (3) of this section and of section 7-2-718
on liquidation and limitation of damages:
 "(a) The agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
 "(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
 "(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.
 "(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
 "(4) Nothing in this section 7-2-718 shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods." (Emphasis added.)
The measure of damages in these cases is determined pursuant to Code of Alabama 1975, § 7-2-714, which states:
 "Buyer's damages for breach in regard to accepted goods.
 "(1) Where the buyer has accepted goods and given notification (subsection (3) of section 7-2-607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
 "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law.
 "(3) In a proper case any incidental and consequential damages under section *Page 1384 7-2-715 may also be recovered." (Emphasis added.)
Section 7-2-719(2) has been interpreted by this Court to imply two types of circumstances where the warranty either was not honored or failed of its essential purpose. The first actionable circumstance under § 7-2-714(2) concerns the dealer's refusal to honor its own warranty and make the repairs or replacements as stated in the warranty. We addressed this issue in Winchester v. McCulloch Brothers Garage, Inc.,388 So.2d 927 (Ala. 1980). Winchester is a breach of warranty case in which plaintiff purchased a vehicle with a defective leaf spring, which caused the drive shaft to become detached from the chassis of the vehicle. Plaintiff filed suit after the defendant dealership refused to repair the vehicle. Plaintiff received a verdict in the amount of $20,000, which was reduced by the trial judge's order of remittitur of $15,000. Plaintiff appealed. We held, inter alia, that where a dealership has refused to repair a vehicle pursuant to its warranty contract, that warranty has failed of its essential purpose.
The other circumstance in which this Court has stated that a warranty may fail of its essential purpose was announced inMassey-Ferguson, Inc. v. Laird, 432 So.2d 1259 (Ala. 1983), in which plaintiff purchased a combine from defendant. Over the course of two years, plaintiff experienced numerous mechanical problems with the combine. Defendant attempted to repair the machine but its attempts were never to plaintiff's reasonable satisfaction. We held that a seller does not have an unlimited time to effect repairs or to replace parts under a warranty. We further held that a jury could reasonably find that the combine had not been repaired within a reasonable time and that the limited warranty in question had failed of its essential purpose, given the numerous attempts to repair the combine over an extended period of time. In the instant case, we are faced with a situation in which plaintiff retained possession of the truck only 45 days, and during this period the truck required service on four separate occasions. We are aware that the truck remained at Liberty for repairs approximately 13 days in this 45-day period, and that that fact prevented the complete use of the truck for gainful economic purposes and places a financial burden on Kimbrel, who had relied on the income produced with the truck to repay the debt incurred to purchase the truck. Although we are of the opinion that the warranty, under the facts in this case, failed of its essential purpose, we also are of the opinion that the jury verdict of $80,296 is excessive. We affirm the judgment in this case, provided the plaintiff accepts a remittitur of $65,296. If the remittitur is not accepted, then the judgment will be reversed and the cause remanded for a new trial. Plaintiff must notify this Court of his election within 30 days of the date of this opinion.
AFFIRMED CONDITIONALLY.
HORNSBY, C.J., and MADDOX and STEAGALL, JJ., concur.
ALMON, J., concurs in the result.