This is an appeal of a judgment entered on a jury verdict in favor of the plaintiff. We reverse and remand.
Limestone Farmers Cooperative, Inc. ("Limestone"), bought a fertilizer applicator machine from Ag-Chem Equipment, Inc., and its subsidiary, Big A Equipment Company (hereinafter together referred to as "Ag-Chem"). Ag-Chem manufactured the machine. The engine in the applicator was manufactured by Cummins Engine Company, Inc. ("Cummins"), and was installed by Ag-Chem. The purchase price of the applicator was $100,160, which was paid by a down payment of $6,165, a subsequent check for $55,485, and a trade-in allowance of $38,510 on a 1977 Big A model fertilizer applicator. Ag-Chem expressly warranted the machine to be free from defects in material and workmanship for 180 days from the first date used or for 2,400 miles or 300 hours of operation, whichever came first. Cummins warranted that the engine would be free from defects in workmanship or material for two years or for 2,000 hours of operation from the date of delivery, whichever came first.
After approximately 450 hours and 4,054 miles of use, an Ag-Chem representative inspected the applicator. At this point, the engine was in good working order. Within three months of the inspection, and after approximately 650 hours of operation, the engine had "blown." Limestone's assistant manager had the machine transported to a Cummins dealership in Decatur. The Cummins representatives determined that a rubber elbow had been incorrectly installed and that it had allowed dirt to enter the engine and that the dirt had caused the engine to blow. It is undisputed that Ag-Chem incorrectly installed the rubber elbow when the applicator was new. Ag-Chem offered to pay for Cummins to rebuild the engine, but Limestone refused, insisting that it was entitled to a new engine. Ag-Chem then sent Limestone a check for $3,615.30, the amount it estimated it would cost to rebuild the engine. Limestone never cashed the check, but ordered a new engine from Cummins at a purchase price of $13,886.
Limestone sued Cummins, alleging a breach of the express warranty Cummins had given on the engine. Limestone also sued Ag-Chem and Big A alleging a breach of express warranty, breach of warranty of fitness for a particular purpose, and negligent inspection of the applicator.
At the conclusion of the plaintiff's case-in-chief, the trial court directed a verdict in favor of Cummins on the express warranty count, thereby releasing Cummins from the case. The court also directed verdicts in favor of Ag-Chem and Big A on each count except the breach of express warranty count. After deliberation on the breach of warranty count, the jury returned a verdict against Ag-Chem and Big A for $26,218.64. The trial court denied the defendants' motion for a new trial, and this appeal followed.
The evidence at trial showed that Ag-Chem improperly installed the rubber elbow that caused the engine to malfunction. Ag-Chem does not dispute that it improperly installed the rubber elbow, and coverage under the warranty, therefore, is not an issue. Where coverage under the warranty is not at issue, we must determine what damages are recoverable for breaching the warranty. However, to determine the amount of damages, we must first determine if the warranty failed of its essential purpose. *Page 252 
In order to show that the warranty failed of its essential purpose, Limestone must either show that the dealer refused to repair or replace the engine in accordance with the warranty or that the dealer did not repair the engine within a reasonable time. Liberty Truck Sales, Inc. v. Kimbrel, 548 So.2d 1379
(Ala. 1989). Limestone argues that the first requirement ofKimbrel was met, because Ag-Chem refused to replace the engine with a new engine, which Limestone argues was required by its warranty.
However, the warranty from Ag-Chem, in pertinent part, states the following:
 "Our obligation under this warranty is limited to repairing or replacing free of charge to the original purchaser-user any part that in our judgment shows evidence of defect or improper workmanship, provided the part is returned to Ag-Chem within thirty (30) days of the failure. (Emphasis added.)
". . . .
 "Ag-Chem shall not be liable for any recovery greater in amount than the cost of repair of defects in workmanship." (Emphasis added.)
The warranty clearly states that Ag-Chem may repairor replace any part that shows evidence of improper workmanship. The warranty further states that Ag-Chem will not be liable for any amount in excess of the cost of repairing the defects.
Code of Alabama 1975, § 7-2-719(1)(a), states the following with regard to limitation of remedies:
 "(a) The agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." (Emphasis added.)
Thus, barring a failure of the warranty's essential purpose, Ag-Chem was under no duty, under the warranty, to replace the engine with a new engine. If, however, Ag-Chem had refused to repair the engine in accordance with the warranty or had refused to repair within a reasonable time, its warranty would have failed of its essential purpose, and Limestone would have been entitled to a new engine. Volkswagen of America, Inc. v.Harrell, 431 So.2d 156, 164 (Ala. 1983).
In the present case, it is undisputed that Limestone never tendered the engine to Ag-Chem so that the engine could be repaired. Limestone presented testimony that it did not tender the engine because, it said, on previous occasions, it had experienced problems with another rebuilt Cummins engine and did not want this engine rebuilt. In addition, Limestone presented testimony that the value of the fertilizer applicator would be reduced if it had a rebuilt engine.
This testimony notwithstanding, the fact remains that Limestone never gave Ag-Chem the opportunity to rebuild the engine in accordance with the warranty. On more than one occasion, Ag-Chem offered to rebuild the engine. Ag-Chem then sent Limestone a check for $3,615.30 to cover the cost of the repair work, but Limestone refused to take the engine to Cummins for repair. Under the terms of the warranty between Ag-Chem and Limestone, Ag-Chem fulfilled its obligation to repair the engine, and it may be held liable only for the cost of fully repairing the engine.
Accordingly, we hold that the express warranty did not fail of its essential purpose and that Ag-Chem's liability may not exceed the cost of repairing the engine. The judgment is hereby reversed and the cause remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur. *Page 253