**BOOTH REAL ESTATE & INSURANCE AGENCY, Appellee,**

v.

**SPRAGUE HEATING & ELECTRIC, Appellant.**

[Cite as *Booth Real Estate & Ins. Agency v. Sprague Heating & Elec.* (1991), 74 Ohio App.3d 439.]

Court of Appeals of Ohio,
Vinton County.

No. CA–464.

Decided June 5, 1991.

*N. Robert Grillo* and *Jeffrey L. Simmons,* for appellee.
*Lavelle Law Offices* and *John P. Lavelle,* for appellant.

HARSHA, Judge.

This is an appeal from a judgement entered by the Vinton County Court, Small Claims Division, in favor of plaintiff-appellee, Booth Real Estate & Insurance Agency ("Booth"), against defendant-appellant, Sprague Heating & Electric ("Sprague"), in the sum of $514.15.

Appellant assigns the following error:

"The trial court committed reversible error when it awarded damages to the prevailing party because there was no contractual right to recover in the instant case."

On June 13, 1988, appellee filed a petition in small claims court alleging that the appellant failed to "honor an agreement concerning warranty work on

compressor of air conditioner." The matter was heard on July 12, 1988, with appellee appearing *pro se* and appellant represented by counsel. The following pertinent evidence was presented to the trial court.

Appellee Booth purchased a commercial property located at 203 South Market Street, McArthur, Ohio, from Ohio Valley Health Services ("Ohio Valley") in March or April 1988. Prior to this transfer, appellant Sprague had installed a new air conditioning unit for Ohio Valley on May 22, 1987. While Ohio Valley owned the real estate, appellant Sprague made two service calls on the air conditioner. These two calls were originally made as warranty claims, but were subsequently determined to be routine service requirements for which Ohio Valley was billed.

On April 14, 1988, Booth received a call from its commercial tenant at the South Market Street property complaining that the air conditioner was not working. However, Booth made no effort to contact Sprague until May 3, 1988. The evidence is in conflict, but it appears that direct communication between the parties did not occur until May 16, 1988 by telephone. At that time, appellant informed appellee that the unit was under warranty and that it would be taken care of. The evidence is also in conflict as to how soon service would be provided.

On May 23, 1988, Booth received another call from its tenant demanding that the air conditioner be repaired immediately as appellant had yet to appear. On this date, Booth, on its own initiative, ordered a replacement compressor and had it installed by an independent contractor on or about May 25, 1988. Two days later, appellant arrived to inspect the unit, but the repairs had already been made.

Under the terms of the manufacturer's warranty, the compressor unit was covered for a period of five years as being free from defects in factory workmanship and material under normal use and service. If found defective, the remedy was repair or replacement at the manufacturer's option. Shipping and labor charges were specifically excluded from coverage. Appellant testified that as the installing dealer, the dealer provided labor on warranty claims to the original purchaser only, for a period of one year.

The manufacturer's warranty further provided that it extended to a subsequent purchaser, providing the unit had not been removed from its original place of installation. In order to obtain warranty service, the purchaser was instructed to notify the installing dealer, preferably in writing, of the problem as soon as possible after its discovery. Service requests made to the manufacturer without prior dealer contact were to be referred back to the dealer by the manufacturer. If the customer did not receive a response from the dealer within a reasonable time, direct contact with the manufacturer was requested.

A copy of this manufacturer's warranty was provided by Sprague to Ohio Valley upon installation of the unit in May 1987. However, Booth did not receive the warranty from Ohio Valley until May 22, 1988, almost a week after successfully contacting appellant by telephone concerning the problem.

At the hearing, the trial court entered judgment for appellee Booth in the sum of $514.15, representing $298.15 for a replacement compressor, $49.50 for shipping, $46.50 for charging the unit with freon, $20 transportation costs for picking up the replacement unit, and $100 labor for installation. A charge of $62 for a service call by another repairman was not allowed. It was also ordered that Sprague was to receive possession of the warranted compressor.

■ Appellant's sole assignment of error asserts that the trial court improperly awarded damages to Booth because there was no contractual right to recover. We disagree. Booth was not entitled to recover on the basis of the telephone conversation of May 16, 1988. We agree that no contract for repair was established by that conversation alone. However, we hold that appellant is responsible for repairs under the manufacturer's warranty.

We need not address the question of whether a dealer is liable for express warranties made by the manufacturer by virtue of the mere act of selling the product. But, see, *Breen v. Cohen Auto Co., Inc.* (1973), 75 Misc.2d 927, 349 N.Y.S.2d 573, 13 UCC Rep. 803. We hold under the facts of this case that the dealer, Sprague, adopted the warranty of the manufacturer.

It is important to note that the warranty in this case referred the purchaser to the dealer for service under the warranty. Sprague provided service on the unit on two prior occasions. Notwithstanding the fact that these calls turned out to be for service other than warranty requirements, appellant initially responded to them as if they were under coverage. Because the warranty, by its terms, applies to subsequent purchasers, it is of no significance that these calls were from Ohio Valley.

Appellant testified that the company routinely exchanged parts under warranty with the manufacturer without cost to the consumer. Appellant stated that the company exchanged compressors with the manufacturer of the unit in question with no charge if the warranty remained in effect.

■ Furthermore, both appellant and appellee testified that during the May 16 telephone conversation, appellant stated the unit was under warranty and that the company would take care of it.[1]

---

1. The dissent relies on several authorities to suggest that there was "no evidence whatsoever" that the manufacturer's warranty had been adopted by appellant. Section 1–103 of the Uniform Commercial Code, as incorporated in Ohio at R.C. 1301.03, provides that "[u]nless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306.,

Under these facts, we hold that appellant did indeed adopt the warranty of the manufacturer. See Duesenberg–King, Sales & Bulk Transfers (1986), Section 6.08[2], Express Warranties.

A warranty is not instantly breached upon the discovery of a defect within the warranty period. It is the refusal or inability to remedy the default within a reasonable time that constitutes the breach of warranty. *Ford Motor Co. v. Gunn* (1971), 123 Ga.App. 550, 181 S.E.2d 694. The trial court's decision in this case, that appellant waited too long to provide warranty service, was not against the manifest weight of the evidence. This court will not substitute its judgment for that of the trial court when there exists competent, credible evidence supporting the decision rendered by the trial judge. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

---

1307., 1308., and 1309., of the Revised Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, * * * or other validating or invalidating cause *shall supplement* its provisions." (Emphasis added.)

In the case at bar, Terry Walker, an employee of appellee, testified that on May 16, 1988, he telephoned Mark Metts, a representative of appellant, and asked Metts "if he'd want to take care of a warranty." According to Walker's testimony, Metts said that appellant "would take care of the warranty." A judgment pronounced by a court of general jurisdiction, regular on its face, carries with it the presumption of validity. *Toledo Trust Co. v. Santa Barbara Found.* (1987), 32 Ohio St.3d 141, 144, 512 N.E.2d 664, 667. Moreover, a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof. *Joyce v. General Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172.

The trial court could have reasonably inferred from Walker's testimony that by stating that he "would take care of the warranty," Metts, as appellant's representative, was either adopting the manufacturer's warranty and/or was not going to charge for either parts needed or labor involved. The trial court explicitly noted the Walker testimony in its oral decision at the conclusion of the hearing.

Furthermore, under the circumstances mentioned in Walker's testimony, appellant was arguably estopped from later asserting that it was not liable for any breach of warranty or failure to complete the work within a reasonable time. Cf., *e.g.*, *McCroskey v. State* (1983), 8 Ohio St.3d 29, 8 OBR 339, 456 N.E.2d 1204; *Pedler v. Aetna Life Ins. Co.* (1986), 23 Ohio St.3d 7, 23 OBR 6, 490 N.E.2d 605. Since small claims matters are governed by R.C. Chapter 1925, the Civil Rules, to the extent they are clearly inapplicable, do not apply. Civ.R. 1(C)(4). Appellee's claim for relief in its small claims complaint of "[f]ailure to honor agreement concerning warranty work on compressor of air conditioner" was sufficiently broad to encompass the possible legal and equitable grounds supporting the trial court's judgment insofar as it found a breach of an adopted warranty. Finally, since a court may, under Civ.R. 54(C) (which is not "clearly inapplicable" to small claims proceedings), allow the relief to which the party is entitled, regardless of what may have been requested in the complaint, *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 132, 564 N.E.2d 1060, 1061, at fn. 1; *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 28, 71 O.O.2d 12, 16, 325 N.E.2d 544, 548, the argument proffered in the dissent that appellee's cause of action was limited to the manufacturer's express warranty is also meritless. Accordingly, the judgment below could alternatively be affirmed on the basis of a breach of a new agreement between the parties.

■ As to the question of damages, we hold that the trial court erred in awarding labor and shipping costs. The manufacturer's warranty clearly excludes labor and shipping costs. Such limitations on damages are consistent with the provisions of R.C. 1302.91 and 1302.93. Appellant's own independent warranty for labor applied only to the initial purchaser.

In accordance with App.R. 12, we modify the judgment of the trial court to reflect a judgment in favor of appellee Booth in the sum of $298.15 and order the same to be entered upon the record. In all other respects, the trial court's judgment is affirmed.

*Judgment affirmed as modified.*

GREY, J., concurs.

STEPHENSON, P.J., dissents.

STEPHENSON, Presiding Judge, dissenting.

I respectfully dissent. The majority opinion appears to employ a common-law contract theory to hold that appellant has adopted the manufacturer's warranty and then concludes that appellant is responsible for repairs under such warranty. The majority has cited no legal authority for this position and I am aware of none. Consequently, I cannot join in its ruling.

Although I am not aware of any Ohio cases on this issue, I would note that a theory of an "adopted manufacturer's warranty" does exist under certain provisions of the Uniform Commercial Code ("UCC").[2] Generally speaking, a dealer is not liable for the breach of a manufacturer's warranty. *McGee v. Nashville White Trucks, Inc.* (Tenn.App.1981), 633 S.W.2d 311, 313. However, several authorities suggest that, under certain circumstances, a dealer in a sales transaction may adopt or assume a manufacturer's express written warranty as his own seller's warranty. 3 Anderson, Uniform Commercial Code (1983) 208, Section 2–314:102; 77 Corpus Juris Secundum (1952) 1134–1135, Sales, Section 308e. That being said, I nevertheless would hold that such an adoption of warranty has not occurred in the cause *sub judice.*

While there does not appear to be any predetermined indicia of when a dealer has adopted a manufacturer's warranty as his own, I would note those factors considered by the Supreme Court of Alabama in *Liberty Truck Sales, Inc. v. Kimbrel* (1989), 548 So.2d 1379, 1382–1383. That court found the

---

**2.** Article Two of the UCC is codified at R.C. Chapter 1302. The provisions of that chapter are invoked whenever there is a transaction involving goods. R.C. 1302.02. It would seem obvious that, at the time of sale and installation, the air conditioning unit would come within the statutory rubric of "goods" as defined in R.C. 1302.01(A)(8). See 3 Anderson, Uniform Commercial Code (1983) 276, Section 2–314:190.

following three items indicative of the dealer having adopted the manufacturer's warranty: (1) the warranty was mentioned four times in the dealer's purchase agreement and retail installment contract; (2) the warranty provisions were specifically incorporated into the purchase agreement; and (3) the dealer made three separate repairs on the item pursuant to the warranty. Of these three factors, the court clearly considered the first two of prime importance. *Id.* at 1383.

In reviewing the record herein, I can find no evidence whatsoever that the manufacturer's warranty was either mentioned by or incorporated into the sales contract for the air conditioning unit. Indeed, I can discern very little evidence or even mention of the sales transaction with regard to this equipment.

On the other hand, the majority opinion seems to attach great significance to the fact that repair work was done by appellant on the air conditioning unit in the past. I am not persuaded. Of those jurisdictions which have considered the issue, it has been generally agreed that a dealer's repair work, in the absence of a specific adoption of a manufacturer's warranty, will not alone give rise to dealer liability under such warranty. See, *e.g., Carbo Industries, Inc. v. Becker Chevrolet, Inc.* (1985), 112 A.D.2d 336, 338, 491 N.Y.S.2d 786, 789; *Kure v. Chevrolet Motor Div.* (Wyo.1978), 581 P.2d 603, 609; *Courtesy Ford Sales, Inc. v. Farrior* (1974), 53 Ala.App. 94, 99, 298 So.2d 26, 31. This is true even where the repair work is done pursuant to the manufacturer's warranty. *Carbo Industries, supra,* 112 A.D.2d at 338, 491 N.Y.S.2d at 789. Accordingly, I attach no particular significance to the past repair work done by appellant on the air conditioning unit. Without further evidence that the manufacturer's warranty was adopted, I cannot agree that appellant is liable under its terms.[3]

The majority also appears to attach some significance to the testimony by Terry Walker that a representative of appellant had informed him that appellant "would take care of the warranty." Nevertheless, the majority has cited no case law, and I am aware of none, to support the proposition that this

---

3. I would further be reluctant to apply this theory in the cause *sub judice* because I am not entirely persuaded that appellant was the "dealer" of the air conditioning unit. In reviewing the record, I am unable to find any determinative evidence that appellant was the party that actually *sold* the equipment in question. Both the transcript and the briefs make frequent reference to the fact that appellant *installed* the air conditioning unit. However, the installation of such equipment would not constitute a "sale of goods." See Annotation (1967), 15 A.L.R.3d 1207, 1209, at fn. 1. Rather, such a contract would be for the rendition of services and the UCC does not apply to such contracts. 81 Ohio Jurisprudence 3d (1988) 142, Sales, Section 15. Even assuming, *arguendo,* that appellant was, by inference, a "dealer" with respect to the air conditioning unit, my conclusion would remain the same for those reasons set forth, *supra,* in this opinion.

single comment would constitute an adoption of the manufacturer's express warranty. To the contrary, those authorities cited *supra* in this dissenting opinion suggest that if a manufacturer's warranty is deemed to be adopted, then such an event will occur as a result of circumstances arising at the time of sale, not several months later.

As the majority admonishes, a trial court judgment does indeed carry a presumption of validity. However, that presumption is not irrebuttable and it is manifestly the duty of this court to reverse those judgments unsupported by law. Despite references to theories of new agreements and estoppel as advanced in its footnote, the majority opinion cannot escape the fact that its judgment holds a party, other than a manufacturer, liable on the terms of a *manufacturer's* express written warranty.

It would seem reasonable that the party to be held responsible on an express manufacturer's warranty would be the manufacturer. It is significant to note that appellee's action below was not based on any express or implied seller's warranty given by appellant under R.C. 1302.26 or 1302.27; nor did appellee bring suit on the basis of any breach of a servicing arrangement with appellant. Rather, the cause below was based on express provisions given in an express warranty by the manufacturer. Thus, only the manufacturer should be liable for any breach of those provisions. Any breach of an express or implied warranty given by appellant herein should be determined on the basis of those warranties themselves and not one given by the manufacturer.

Thus, I dissent.