08-3894-cv
T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2008

Argued:  June 24, 2009                    Decided: January 14, 2010

Docket No. 08-3894-cv(L), 08-3897-cv(CON), 08-4379-cv(XAP)*

_____

T.CO METALS, LLC,

*Petitioner-Appellant*,

-v.-

Dempsey Pipe & Supply, Inc.,

*Respondent-Appellee.*

_____

Before:      MINER, LIVINGSTON, *Circuit Judges*,
             and TRAGER, *District Judge*.**

Parties to a contract for the sale of steel pipe brought cross-motions to vacate, modify, and correct an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-11. The seller appeals from the district court's rulings that (a) the arbitrator did not act in manifest disregard of the law by awarding the buyer diminution-in-value damages, despite the parties' contractual bar on consequential damages; and (b) the arbitrator exceeded his powers by granting in part the seller's petition to revise the award to correct certain errors.  After vacating the revised

---

*08-4379-cv(XAP) was dismissed with prejudice pursuant to a so-ordered stipulation filed on November 25, 2008.

**The Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

award, the district court confirmed the original award. On appeal, the buyer filed a motion for reasonable attorneys' fees based on its contention that the seller's manifest disregard claim is frivolous.

Affirmed in part, reversed in part, and remanded.

Alfred J. Kuffler (Stephen W. Armstrong and Lathrop B. Nelson, III, *on the brief*), Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, Pennsylvania, *for Petitioner-Appellant*.

Marc J. Goldstein, Marc J. Goldstein Litigation & Arbitration Chambers, New York, New York, *for Respondent-Appellee*.

LIVINGSTON, *Circuit Judge*:

Petitioner-Appellant T.Co Metals, LLC ("T.Co") appeals from judgments of the United States District Court for the Southern District of New York (Crotty, *J.*) resolving two consolidated actions commenced by T.Co and Respondent-Appellee Dempsey Pipe & Supply, Inc. ("Dempsey"), in which the parties sought, *inter alia*, to vacate, modify, and correct an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10-11. Conducted according to the International Dispute Resolution Procedures of the American Arbitration Association's International Centre of Dispute Resolution ("ICDR"), the arbitration concerned a dispute over allegedly defective steel pipe that T.Co delivered to Dempsey pursuant to two sales contracts between the parties. Arbitrator Paul D. Friedland issued a final award on April 20, 2007 ("Original Award"). Both parties then petitioned the arbitrator to amend the Original Award pursuant to ICDR Article 30(1). On May 30, 2007, the arbitrator issued an order ("Amendment Order") accepting a small portion of the requested changes and ordering that the Original Award be amended accordingly. The arbitrator then issued an amended award on June 4, 2007 ("Amended Award"). Both T.Co and Dempsey filed petitions in

the district court to modify or to vacate the Amended Award in part. The district court denied T.Co's petition and granted in part and denied in part Dempsey's petition.

T.Co raises two issues on appeal. First, T.Co argues that the arbitrator acted in "manifest disregard of the law" by awarding diminution-in-value damages to Dempsey despite the parties' contractual provision barring consequential damages. The district court's ruling to the contrary, T.Co contends, resulted from an erroneous interpretation of the Supreme Court's recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008). Second, T.Co takes issue with the district court's order vacating the Amended Award and confirming the Original Award on the ground that the arbitrator exceeded his powers by ordering that certain errors be corrected in the Original Award. The district court concluded that the arbitrator's revisions, which benefitted T.Co, violated the *functus officio* doctrine, which limits the power of arbitrators to act once they have completed the duties assigned to them. Dempsey did not appeal, but has moved before this Court for reasonable attorneys' fees based on the contention that T.Co's manifest disregard claim is frivolous for purposes of Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912.

On the first issue, we agree with the district court's refusal to vacate the arbitrator's damage award to Dempsey on the ground of manifest disregard. We decline, however, to award attorneys' fees to Dempsey. We find the second issue more difficult to resolve. Ultimately, however, we conclude that the district court erred in applying the *functus officio* doctrine to the arbitrator, as the arbitrator was acting on the parties' petitions for reconsideration, and he revised the award pursuant to his interpretation of the arbitral rules pursuant to which the parties had agreed the arbitration would be conducted. We conclude that the arbitrator's interpretation of these rules was entitled to deference and that, applying that deference, the arbitrator did not exceed his powers by granting in

part T.Co's request that certain errors be corrected in the award.

Accordingly, we affirm in part and reverse in part the judgment of the district court. We vacate the order confirming the Original Award and remand with instructions that, upon application, the Amended Award should be confirmed.

*Background*

I. The Commercial Dispute

Pursuant to two sales contracts dated February 25 and April 25, 2005, T.Co agreed to sell Dempsey approximately 2440 metric tons (or 2690 short tons) of twenty-foot, plain-end steel pipe, to be produced in Chile and sent to Philadelphia in four shipments arriving over the spring and summer of 2005. Among other things, each contract provided that "Seller is not responsible for consequential loss or damage." J.A. 27, 30. The contracts also contained an arbitration clause, reading in part as follows:

> Any . . . dispute, claim or controversy between [T.Co and Dempsey] which cannot
> be resolved through negotiations within a period of 30 days . . . shall be referred to
> and finally resolved by arbitration under the [i]nternational arbitration rules of the
> American Arbitration Association [(hereinafter "ICDR Articles")]. Arbitration will
> take place in New York, NY USA and proceedings will be conducted in English.
> The award of the Arbitration tribunal will be final and subject to no appeal. The
> costs and expenses of the prevailing party (including, without limitation, reasonable
> attorney's fees) will be paid by the other party.

*Id.* The contracts designated the "Laws of the State of New York" as their governing law. *Id.*

Upon delivery, Dempsey discovered that a substantial amount of the pipe it received was bowed or bent to the point of being out of tolerance for straightness.[1] Nevertheless, out of the four

---

[1] Before the arbitrator, Dempsey claimed that 1,999 short tons of pipe were defective; the arbitrator ultimately determined that 1,599 short tons of pipe were out of tolerance for straightness.

4

shipments of pipe it received Dempsey ultimately rejected only a small portion of the second shipment, choosing to keep the rest of the delivered pipe and to straighten the defective pipe itself.[2] The contract price for the pipe was $780 per short ton. After straightening the defective pipe, Dempsey was able to sell it at $922 per short ton.

T.Co sent Dempsey an invoice for $1,993,145.53, of which Dempsey paid $1,655,105.81. In June 2006, T.Co commenced arbitration and claimed damages against Dempsey for $338,039.72, the amount of payment that Dempsey had withheld. Dempsey filed a counterclaim that included a demand for $1,895,052 in damages due to the diminished value of the defective steel pipe that Dempsey accepted. In response, T.Co argued that Dempsey's counterclaim was an attempt to recover lost profits, which it asserted are defined as consequential damages under New York law and thus are not recoverable pursuant to the parties' contract. In its written submissions to this Court, Dempsey acknowledges that it did ask the arbitrator to award Dempsey consequential damages in the form of lost profits, contending that the contractual exclusion of consequential damages had been superseded by an oral agreement between the parties. But Dempsey asserts it also argued in the alternative that, if the arbitrator decided that the consequential damages provision remained in force, Dempsey was still entitled to recover damages for the diminished value of the pipe, since those damages constituted "benefit-of-the-bargain" damages under section 2-714(2) of the New York Uniform Commercial Code ("N.Y. U.C.C."), which provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

---

[2] Specifically, Dempsey rejected 139 short tons of pipe out of the 2,690 short tons delivered.

5

## II. The Original Arbitration Award

On April 20, 2007, the arbitrator issued the Original Award, which included an award of $338,039.72 to T.Co for the outstanding unpaid invoices, and an award of $420,357 to Dempsey for the diminished value of the defective pipe.

When analyzing Dempsey's claim for damages, the arbitrator agreed with T.Co that the consequential damages exclusions in the contracts remained in effect. Nevertheless, the arbitrator also concluded that N.Y. U.C.C. § 2-714(2) provided the appropriate measure of damages for nonconforming goods where, as here, the fair market value of the goods as accepted was ascertainable.[3]

The arbitrator proceeded to apply § 2-714(2)'s formula—*i.e.*, that damages equal the value of the goods as warranted minus the value of the goods as accepted, measured at the time and place of acceptance. The arbitrator calculated the value of the pipe as warranted by looking both to invoices of steel pipe sellers that supplied entities like Dempsey and to evidence regarding the price at which pipe was being sold by firms similarly situated to Dempsey. On this basis, the arbitrator determined that the value of the pipe as warranted was $1000 per short ton. After additional calculations and evaluation of the evidence, the arbitrator determined the value of the nonconforming pipe at the time and place of acceptance to be $737 per short ton. Under § 2-714(2)'s formula, then, Dempsey was entitled to $263 ($1000 - $737) per short ton, or $420,537 total for the 1599 short tons of pipe that the arbitrator determined were nonconforming.

---

[3] T.Co pointed out separately that its General Terms and Conditions included clauses limiting Dempsey's breach-of-contract remedies to repair or return for credit. The arbitrator determined, however, that these clauses failed in their essential purpose because T.Co "could not, or did not, offer either of these two remedies to Dempsey." J.A. 116. Accordingly, the arbitrator concluded pursuant to N.Y. U.C.C. § 2-719(2) that Dempsey had recourse to the general remedy provisions of Article 2 of the N.Y. U.C.C., including § 2-714.

6

### III. The Amended Arbitration Award

Both parties promptly submitted applications to the arbitrator to amend the Original Award pursuant to ICDR Article 30(1), which permits the arbitrator to "correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award." In response, the arbitrator issued an order ("Amendment Order") on May 30, 2007, rejecting most of the challenges to the Original Award but agreeing with a handful of T.Co's correction requests and ordering that the Original Award be amended accordingly.

In the Amendment Order, the arbitrator noted T.Co's contention that he "committed manifest errors of law by (i) compensating Dempsey for lost profits through the 'back door' in the Arbitrator's calculation of the value of the pipe as accepted (out-of-tolerance), and (ii) awarding Dempsey damages for diminution of value in addition to actual processing costs." J.A. 150. In rejecting these arguments, the arbitrator stated, "T.Co's allegation of manifest errors of law is not an application for interpretation or correction of the Award, and it is beyond the powers of the Arbitrator under Article 30 of the ICDR International Rules to amend the Award on the basis of an 'error of law' even if there was such an error, which allegation the Arbitrator rejects."

T.Co also alleged that a number of errors were made in the arbitrator's damages calculations. While the arbitrator rejected most of these arguments for modification, he agreed that several errors had prejudiced T.Co. Specifically, the arbitrator recognized the following four errors, relating to four of the twenty-three invoices and price notices he considered to determine the price of the pipe as warranted:

(1) the Morris Industries Invoice dated December 20, 2005: The arbitrator noted that, when referencing this invoice, he had misread the correct price of $769 per short ton to be $769 per

7

100 feet, which the arbitrator had converted to $904 per short ton. J.A. 146. The arbitrator attributed the mistake to handwriting obscuring the unit of measurement on the invoice. To remedy this "clerical" error, the arbitrator ordered that the range of Morris invoice prices articulated in the Original Award ("between $700 and $904 per short ton") be amended to read "between $700 and $769 per short ton."

(2) the HOW Invoice dated July 16, 2005: The arbitrator determined that this invoice should not have been included at all, as it was for ten-foot pipe while the contracts between T.Co and Dempsey concerned (less expensive) twenty-foot pipe. The arbitrator ordered that the award be amended to exclude mention of the July 2005 HOW Invoice.

(3) the HOW Invoice dated August 1, 2005: While the pipe Dempsey purchased was "plain end pipe," the pipe covered by the August 2005 HOW Invoice was processed pipe (which meant that it had gone through threading and coupling). The arbitrator agreed with T.Co that he erred by including this invoice without making a downward adjustment to reflect the additional cost of threading and coupling expended on the processed pipe. However, the arbitrator also noted that the precise cost of threading and coupling the invoiced pipe had not been argued before him prior to his issuing the Original Award, and the constraints of ICDR Article 30 prevented him from considering post-Award submissions to determine the cost. Instead, the arbitrator simply concluded that the invoice, which was at the high end of the invoices considered, "required a small downward adjustment which the Arbitrator is not in a position to quantify." *Id.* at 151.

(4) the Dempsey Pipe and Steel Co. Invoice dated November 5, 2005: This invoice, which concerned threaded and coupled pipe, presented the same error as did the August 2005 HOW

8

Invoice. Accordingly, the arbitrator concluded that it "required an unquantifiable downward adjustment similar to that required for the 1 August 2005 invoice." *Id.*

In the Original Award, the arbitrator recited all the evidence it considered relevant to determining the value of the pipe as warranted—including the four invoices that the arbitrator now agreed were flawed. But while the arbitrator, when determining the value of the pipe as warranted, reached his ultimate valuation "[o]n the basis of" and "[i]n light of" this evidence, the way each particular bit of evidence entered the arbitrator's calculation was not expressly articulated. *Id.* at 123-24. When considering the effect that correcting the four flawed pieces of this evidence would have on the ultimate amount of diminution damages awarded to Dempsey, the arbitrator first explained his authority to make such an adjustment:

> While the consequences of these four corrections is not a mere computational issue, and necessarily involves the same appreciation of the evidence before the Arbitrator on the issue of value as was conducted pre-Award, the Arbitrator believes that he has the power under Article 30 of the ICDR International Rules to reach conclusions derived from correction of clerical errors. Article 30 of the ICDR International Rules does not say that errors subject to correction must be set out in an award's conclusions. It is therefore to be understood that an Arbitrator is empowered to change conclusions based upon clerical errors in the body of an award, even where such correction process entails an exercise of judgment beyond rote computation.

*Id.* at 151. The arbitrator then announced that, "but for the above-identified errors, the Arbitrator would have found that the value of the pipe as warranted was $950 per short ton rather than $1000 per short ton." *Id.* Accordingly, the arbitrator reduced Dempsey's award from $420,537 to $340,587 ($950 per short ton - $737 per short ton x 1599 short tons).

The Amended Award incorporating the arbitrator's revisions was issued on June 4, 2007.

IV. District Court Decision

9

T.Co and Dempsey separately filed applications in the Southern District of New York to modify or vacate the Amended Award. In its application, T.Co alleged that the arbitrator's decision to award diminution damages to Dempsey constituted manifest disregard of the law, requiring that portion of the award to be vacated. Dempsey's application argued that the corrections entered by the arbitrator were not clerical errors within the meaning of ICDR Article 30(1), and therefore the arbitrator exceeded his authority in amending the award to account for those errors.[4] On July 8, 2008, the district court issued a decision rejecting T.Co's manifest disregard argument and accepting Dempsey's contention that the arbitrator lacked the authority to correct the award as he did.

With respect to T.Co's manifest disregard argument, the district court observed that the Supreme Court's recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008), had affected the status of manifest disregard as a basis for vacating or modifying an arbitration award. Specifically, the district court considered *Hall Street* to have eliminated manifest disregard as an "independent basis on which to upset an arbitration award," noting that, even if manifest disregard might be characterized as a catch-all phrase used to refer to the modification and vacatur grounds articulated in FAA §§ 10 and 11, *Hall Street* left "no doubt that the statutory bases are exclusive." *T. Co. Metals LLC v. Dempsey Pipe & Supply, Inc.*, No. 07-civ-7747, slip op. at 7 & n.4 (S.D.N.Y. July 8, 2008). Because T.Co failed to argue persuasively for the application of one of the statutory grounds under §§ 10 and 11, the district court denied T.Co's motion to vacate or modify the diminution damages award to Dempsey. In a footnote, the district court also explicitly rejected the

---

[4] Dempsey also contended that, when determining Dempsey's processing costs for straightening the defective pipe, the arbitrator made an "evident material miscalculation of figures" that the district court had the power to correct under Section § 11(a) of the FAA, 9 U.S.C. § 11(a). The district court rejected this contention, however, and Dempsey did not cross-appeal on this issue.

10

applicability of FAA § 10(a)(4)—which permits vacatur where an arbitrator "exceeded [his] powers"—-to the award of diminution-in-value damages. *See* 9 U.S.C. § 10(a)(4). Finally, the district court explained in the alternative that, even if manifest disregard were still a viable basis on which to modify or vacate an arbitration award, the diminution-in-value award was a "reasoned judgment" that did not constitute a manifest disregard of the law.

As for the arbitrator's correction of what it perceived to be clerical errors, the district court agreed with Dempsey that these errors were not evident on the face of the award and were not obvious errors in mathematical computation. Such errors could not be corrected by the arbitrator, the district court concluded, because "to do so would violate the *functus officio* doctrine," *T. Co. Metals LLC*, No. 07-civ-7747, slip op. at 8, which limits the power of arbitrators to act once they have decided all of the issues submitted to them for arbitration. *See id.* at 7-8. The district court therefore concluded that the arbitrator had exceeded his powers and that, pursuant to FAA § 10(a)(4), vacatur of the Amended Award was warranted on this basis.[5] The district court then confirmed the Original Award.[6]


*Discussion*

I. Standard of Review

---

[5] The district court actually stated that it was granting Dempsey's "motion to modify the award," *T. Co. Metals LLC*, No. 07-civ-7747, slip op. at 9, but the court's reasoning is based on FAA § 10(a)(4), 9 U.S.C. § 10(a)(4), which concerns a district court's power to *vacate* an award. The district court's modification powers are found instead in FAA § 11, *id.* § 11. Due to the ambiguity of the district court's actions on this issue, as well as the court's later decision to confirm the Original Award, we therefore construe the district court's judgment as vacating the Amended Award.

[6] It is not clear from the record whether either party specifically requested that the district court take the action of confirming the Original Award. *See generally* 9 U.S.C. § 9 (articulating the district court's power to confirm arbitration awards). However, the parties subsequently agreed to have the Original Award reduced to a judgment.

11

"When a party challenges the district court's review of an arbitral award under the manifest disregard standard, we review the district court's application of the standard *de novo*." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007) (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)) (internal quotation marks omitted). With respect to the district court's decision to vacate the Amended Award as exceeding the arbitrator's powers, we review the district court's legal rulings *de novo* and its findings of fact for clear error. *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009).

## II. Whether the Award of Diminution-in-Value Damages Was Made in Manifest Disregard of the Law

A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a "heavy burden," *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91 (2d Cir. 2008) (quoting *GMS Group, LLC v. Benderson*, 326 F.3d 75, 81 (2d Cir. 2003)) (internal quotation marks omitted), *cert. granted*, 129 S. Ct. 2793 (2009), as awards are vacated on grounds of manifest disregard only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[] is apparent," *id.* at 91-92 (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)) (internal quotation marks omitted). That impropriety "has been interpreted 'clearly [to] mean[] more than error or misunderstanding with respect to the law,'" *id.* at 92 (alterations in original) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986)), or an "arguable difference regarding the meaning or applicability of laws urged upon" an arbitrator, *id.* (quoting *Bobker*, 808 F.2d at 934) (internal quotation marks omitted). Rather, "the award should be enforced, despite a court's disagreement with it on the merits,

if there is a *barely colorable justification* for the outcome reached." *Id.* (quoting *Wallace*, 378 F.3d at 190) (internal quotation marks omitted). With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract. *See id.*

We have recognized three components to this Circuit's application of the manifest disregard standard:

> First, we must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators. An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable. Thus, misapplication of an ambiguous law does not constitute manifest disregard.
>
> Second, . . . we must find that the law was in fact improperly applied, leading to an erroneous outcome. . . . Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.
>
> Third, . . . we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him.

*Id.* at 93 (quoting *Duferco*, 333 F.3d at 389-90).

Recently, the Supreme Court placed the proper scope of the manifest disregard doctrine into some doubt with its decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*,128 S. Ct. 1396, 1404 (2008). On appeal, T.Co argues extensively that, contrary to the determination of the district court, *Hall Street* maintains manifest disregard as a viable ground for vacating an arbitration award. This Court recently made clear in *Stolt-Nielsen SA v. AnimalFeeds International Corp.* that it reads *Hall Street* as "reconceptualiz[ing]" manifest disregard "as a judicial gloss on the specific grounds for vacatur" of arbitration awards under 9 U.S.C. § 10. *See Stolt-Nielsen*, 548 F.3d at 94-95. So interpreted, we concluded that manifest disregard "remains a valid ground for vacating arbitration awards." *Id.* at 94.

The Supreme Court has granted certiorari to review *Stolt-Nielsen*, explicitly on another issue. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 129 S. Ct. 2793 (2009). Even if the Court were to address and confirm our interpretation of the manifest disregard doctrine, however, such a decision would provide no solace to T.Co. We agree with the district court that "[e]ven if 'manifest disregard of the law' [is] still a viable theory, it would be inapplicable here," *see T. Co. Metals LLC*, No. 07-civ-7747, slip op. at 6, because the arbitrator reasonably interpreted New York law to permit Dempsey to recover the diminution in value of the pipe under N.Y. U.C.C. § 2-714(2) notwithstanding the parties' contractual bar on consequential damages.

In arguing to the contrary, T.Co errs by making the unwarranted assumption that the breach-of-warranty damages that the arbitrator calculated pursuant to N.Y. U.C.C. § 2-714(2) inescapably amount to an award of "lost profits," which in turn constitute consequential damages. There is a difference between the loss of the inherent economic value of the contractual performance as warranted, which N.Y. U.C.C. § 2-714(2) addresses, and the loss of profits that the buyer anticipated garnering from transactions that were to follow the contractual performance. The fact that the N.Y. U.C.C. addresses consequential damages in a separate section from diminution-in-value damages supports the inference that these two measures of damages are not necessarily equivalent. *See* N.Y. U.C.C. §§ 2-714(2), 2-715(2); *see also id.* § 2-714(3) (noting that, in addition to breach-of-warranty damages under § 2-714(2), "[i]n a proper case any incidental and consequential damages under the next section may *also* be recovered" (emphasis added)). New York case law similarly demonstrates that a buyer may recover the diminution in the value of the contractual goods as warranted even where there is a contractual exclusion of consequential damages. *See, e.g., Carbo Indus. Inc. v. Becker Chevrolet Inc.*, 491 N.Y.S.2d 786, 790 (N.Y. App. Div. 1985). Our case law

has also recognized in an analogous context that a contractual exclusion of consequential damages "does not foreclose liability for lost profits to the extent those profits merely reflect the value of the goods at destination." *Jessica Howard Ltd. v. Norfolk S. Ry. Co.*, 316 F.3d 165, 169 (2d Cir. 2003).

T.Co's attempts to undermine the weight of this authority are unpersuasive. Moreover, the sources T.Co cites in favor of equating Dempsey's damages under § 2-714(2) to consequential damages fall short of demonstrating that this result is conclusively established by New York law. For example, T.Co cites a Uniform Commercial Code treatise by James J. White and Robert S. Summers for the proposition that § 2-714(2) damages are not appropriate where the contract excludes consequential damages. *See* Appellant's Br. 37. But the White and Summers treatise is more equivocal than T.Co acknowledges. It notes that "reasonable persons often differ whether an item of damage is 'consequential' or not," 1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 10-2 (5th ed. 2006), *available at* 1 WS-UCC § 10-2 (Westlaw), and it specifically recognizes that "[i]n many cases, the consequential damages that appear to be recoverable under 2-715(2) may overlap with the direct 'difference-in-value' damages recoverable under 2-714(2)," *id.* § 10-4, *available at* 1 WS-UCC § 10-4 (Westlaw). The legal distinction between diminution-in-value damages and consequential damages, therefore, resembles the kind of "ambiguous law" that eludes analysis under the manifest disregard doctrine. *See Stolt-Nielsen*, 548 F.3d at 93 (quoting *Duferco*, 333 F.3d at 390).

When assessing damages in the present case, the arbitrator properly looked not only to Dempsey's plans for the pipe, but also assessed a cross section of invoices from other companies that dealt in the pipe in order to determine the pipe's fair market value at the time and place of acceptance. In doing so, the arbitrator was engaged in determining "the value differential component of the

buyer's total loss," not the subjective lost profits and lost business opportunities of Dempsey. *See* White & Summers, *supra*, § 10-4, *available at* 1 WS-UCC § 10-4 (Westlaw). This process of calculating damages constituted a reasonable interpretation of the legal distinction between the diminution-in-value damages that were available to Dempsey under the N.Y. U.C.C. and the consequential damages that were excluded by the parties' contracts. Accordingly, we perceive no manifest disregard of the law under any understanding of the current status of that doctrine. Whatever the scope of the manifest disregard doctrine may be in the wake of *Hall Street*, therefore, the arbitrator's decision to award diminution-in-value damages does not qualify. We therefore affirm the district court's denial of T.Co's motion to vacate the award of diminution-in-value damages to Dempsey.

* * *

Anticipating that this Court would reject T.Co's allegations of manifest disregard with respect to the award of diminution-in-value damages, Dempsey filed a motion ("Fees Motion") on June 3, 2009, arguing that T.Co's appeal of its manifest disregard claim was frivolous and requesting, pursuant to Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912, that Dempsey be awarded reasonable attorneys' fees as damages for having had to defend against T.Co's appeal of the manifest disregard issue.[7] As this Court explained in *In re Drexel Burnham Lambert Group Inc.*, "[s]anctions may be imposed [under Rule 38] when one party proceeds with an argument 'totally lacking in merit,

---

[7] In its principal brief, Dempsey also apprised this Court of an ICDR arbitration Dempsey had brought against T.Co to obtain a declaration that, pursuant to the parties' arbitration agreements, Dempsey was entitled to legal fees it incurred in post-award judicial proceedings. Dempsey suggested that this Court should tax T.Co for Dempsey's legal fees should Dempsey successfully obtain a declaratory award in its favor. In its motion for relief pursuant to Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912, however, Dempsey informed this Court that the arbitrator had ruled in T.Co's favor on the legal fee issue. Therefore, we consider moot Dempsey's argument for legal fees based on the ICDR fee arbitration.

16

framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence.'" 995 F.2d 1138, 1147 (2d Cir. 1993) (quoting *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) (per curiam)).[8]

Though this Court has concluded that T.Co's manifest disregard claim ultimately fails on the merits, we nevertheless recognize that the issue was not so clear cut as to prevent T.Co from making a colorable argument to the contrary. This is particularly so in light of the ambiguity surrounding the interpretation of the manifest disregard standard in the wake of *Hall Street*, along with the significant overlap between expectation and consequential damages under N.Y. U.C.C. §§ 2-714 and 2-715. As a result, we cannot conclude that T.Co's allegation of manifest disregard was so totally lacking in merit as to warrant the award of legal fees under Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912. We therefore deny Dempsey's motion for attorneys' fees as a sanction against T.Co for bringing an alleged frivolous appeal.

### III. Whether the Arbitrator Exceeded his Powers in Reconsidering the Original Award

The FAA allows parties to petition the district court for an order vacating an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). This Court has "'consistently accorded the narrowest of readings' to the FAA's authorization to vacate awards pursuant to § 10(a)(4)." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002)). Our

---

[8] Federal Rule of Appellate Procedure 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." In turn, 28 U.S.C. § 1912 states that "[w]here a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

power under § 10(a)(4) is strictly limited "in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *ReliaStar*, 564 F.3d at 85; *accord Synergy Gas Co. v. Sasso,* 853 F.2d 59, 63 (2d Cir. 1988); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960).

To demonstrate that the arbitrator exceeded his powers by revising the arbitral award in T.Co's favor, Dempsey relies primarily on the doctrine of *functus officio* and on this Court's application of that doctrine in *Hyle v. Doctor's Associates, Inc.*, 198 F.3d 368 (2d Cir. 1999). The *functus officio* doctrine dictates that, once arbitators have fully exercised their authority to adjudicate the issues submitted to them, "their authority over those questions is ended," and "the arbitrators have no further authority, absent agreement by the parties, to redetermine th[ose] issue[s]." *Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991). An arbitrator is not rendered powerless by the completion of his duties, however. In *Hyle*, this Court explained that, even after becoming *functus officio*, "an arbitrator retains limited authority to 'correct a mistake which is apparent on the face of [the] award.'" *Hyle*, 198 F.3d at 370 (alteration in original) (quoting *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991)). This inherent authority applies narrowly "to clerical mistakes or obvious errors in arithmetic computation." *Id.* (quoting *Colonial Penn*, 943 F.2d at 332) (internal quotation mark omitted). Dempsey argues, and the district court agreed, that these limitations on an arbitrator's inherent power to correct facially apparent mistakes preclude revisions such as those contained in the Amended Award.

In reaching this conclusion, Dempsey and the district court ignore an important caveat to the *functus officio* doctrine: that it only applies "absent an agreement by the parties to the contrary." *Id.*;

*accord Trade & Transp., Inc.*, 931 F.2d at 195. Arbitration is "a matter of contract," *ReliaStar*, 564 F.3d at 85 (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)) (internal quotation mark omitted), and parties are certainly free to empower their arbitrators to reconsider an award. *See Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995) (Posner, C.J.) ("Functus officio is merely a default rule, operative if the parties fail to provide otherwise. There is no legal bar to authorizing arbitrators to reconsider their decisions, and some rules for arbitrators . . . do authorize reconsideration."); *see also Veliz v. Cintas Corp.*, 273 F. App'x 608, 609 (9th Cir. 2008) (concluding that the district court erred in applying the *functus officio* doctrine to bar an arbitrator from revisiting issues previously decided, because a number of arbitration agreements at issue "include[d] clauses permitting the arbitrator to reconsider a prior decision"). By definition, the *functus officio* doctrine is applicable only once the arbitrator's assigned duties have come to an end. *See, e.g.*, *Hyle*, 198 F.3d at 370. The arbitrator in this case was empowered by both parties to consider requests for revisions to be made in the arbitration award by virtue of the fact that the parties had agreed the arbitration would be conducted pursuant to the ICDR Articles. Here, the arbitrator interpreted ICDR Article 30(1) to permit him to make some corrections to the Original Award and to bar him from making others.[9] The

_____

[9] Dempsey argues that the ICDR Articles themselves rendered the *functus officio* doctrine applicable after the arbitrator issued the Original Award because ICDR Article 27(1) provides that "[a]wards . . . shall be final and binding on the parties." But the ICDR Articles also expressly permit that, "[w]ithin 30 days after the receipt of an award, any party . . . may request the tribunal to . . . correct any clerical, typographical or computation errors"; "[i]f the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request." ICDR Article 30(1)-30(2). Even assuming, *arguendo*, that the issuance of the final award renders the arbitrator *functus officio* pursuant to Article 27(1), once the parties submit to the arbitrator questions concerning whether particular alleged errors in the award warrant correction, it cannot be said that the arbitrator's "authority over those questions is ended." *See Hyle*, 198 F.3d at 370; *see also Longo de Puerto Rico, Inc. v. United Steel Workers of Am., AFL-CIO-CLC*, 463 F. Supp. 2d 159, 162 (D.P.R. 2006) ("[*Functus officio*] does not prevent an

19

arbitrator thus relied not upon his inherent power to correct facial errors, but upon his interpretation of the corrective authority bestowed upon him by the ICDR Articles, which the parties expressly designated as the rules governing their arbitration. To decide whether the arbitrator exceeded his authority by correcting the Original Award, then, we must ascertain whether the arbitrator acted within his authority in determining that his revisions fell within his power under ICDR Article 30(1) to correct "clerical, typographical or computation errors."

While the district court recognized that the arbitrator derived his corrective powers "in part" from the ICDR Articles, *see T. Co. Metals LLC*, No. 07-civ-7747, slip op. at 8 n.6, it erred by failing to distinguish ICDR Article 30(1) as a source of authority separate from the arbitrator's inherent power to correct facial errors. Dempsey avoids this mistake by directly addressing the scope of ICDR Article 30(1) in its brief, positing that Article 30(1) is best interpreted as having the same limited scope as the corrective power recognized as an exception to the *functus officio* doctrine. But this Court cannot analyze the meaning of ICDR Article 30(1) in a vacuum. Before considering this interpretive issue, we must first determine the level of deference, if any, that should be accorded to the arbitrator's construction of ICDR Article 30(1). The answer to this question, in turn, depends on whether the scope of ICDR Article 30(1) is an issue to be decided primarily by a court or by the arbitrator. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942-43 (1995). If we determine that the parties intended to submit this question to the arbitrator, this Court "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id.*

arbitrator from interpreting, amplifying, or correcting her award when . . . the parties request that an issue be resubmitted to the arbitrator."). Therefore, the arbitrator's interpretation of ICDR Article 30(1) was not constrained by the *functus officio* doctrine, notwithstanding Article 27(1).

20

at 943. If, on the other hand, we decide that the parties anticipated having a court decide the scope of ICDR Article 30(1), we would review the arbitrator's analysis of this issue "independently." *See id.*

To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts "should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. Under certain circumstances, however, the court is to apply a presumption either in favor of or against arbitration of a given issue. First, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (second alteration in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)); *accord First Options*, 514 U.S. at 944. Questions of arbitrability arise in "limited instances" involving "certain gateway matters," which are "typically . . . of a kind that 'contracting parties would likely have expected a court' to decide." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion) (quoting *Howsam*, 537 U.S. at 83). On the other hand, procedural questions that "'grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam*, 537 U.S. at 84 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)).

In the present case, we need not decide whether the scope of the arbitrator's corrective powers under ICDR Article 30(1) is a question presumptively for the arbitrator or for the courts because we conclude that the parties displayed clear and unmistakable intent to submit the question to the arbitrator. Both T.Co and Dempsey made this intention clear by directly petitioning the arbitrator to

21

amend the Original Award; there is no indication that either party anticipated the ICDR Article 30(1) interpretive question being preserved for consideration by a judicial body. Moreover, the ICDR Articles themselves contemplate the arbitrator making such interpretive decisions in the first instance. ICDR Article 36 provides that "[t]he tribunal shall interpret and apply these Rules insofar as they relate to its powers and duties." Thus, even if the scope of ICDR Article 30(1) were considered a "question of arbitrability," the parties' adoption of the ICDR Articles, including Article 36, in their arbitration agreements provides a "clear and unmistakable" expression of their intent to allocate to the arbitrator the task of interpreting the scope of his powers and duties under Article 30(1). *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *PaineWebber Inc.*, 81 F.3d at 1202. In fact, ICDR Article 15(1) more specifically empowers the arbitrator to decide questions of arbitrability, extending to the arbitrator "the power to rule on [his] own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." In *Contec Corp. v. Remote Solution Co.*, we concluded that an arbitration agreement's incorporation of a rule containing substantially equivalent language constituted clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability. *See* 398 F.3d at 208, 210-11. Based on this extensive evidence of the parties' intent that the scope of ICDR Article 30(1) be submitted to the arbitrator for consideration, this Court must afford significant deference to the arbitrator's interpretation of that rule. *See First Options*, 514 U.S. at 943.

The structural and policy arguments Dempsey offers against deferring to the arbitrator's interpretation of ICDR Article 30(1) are unpersuasive. In its brief, Dempsey cautions that "[i]f Arbitrators' interpretations of [Article] 30(1) (and similar rules) were entitled to deference, then on a case-by-case basis they could expand their powers to permit re-consideration of their initial decisions." Appellee's Br. 32 n.13. This may be so, but it is hardly controversial to acknowledge that the FAA allows arbitrators to operate with considerable autonomy. The kid-gloved approach we take to reviewing arbitration awards enables the parties to obtain the efficient dispute resolution they bargained for, while affording them the freedom to design the kind of adjudicative proceedings that will best suit their needs. Given that the FAA permits parties to authorize an arbitrator to determine the scope of his own jurisdiction, we see no justification for this Court interfering with the power granted to an arbitrator to interpret his powers of reconsideration under the applicable arbitral rules of procedure. The remedy for unduly broad arbitral powers is not judicial intervention: it is for the parties to draft their agreement to reflect the scope of power they would like their arbitrator to exercise.

In supplemental briefing before this Court, Dempsey contends that permitting an arbitrator to exercise broad reconsideration powers could result in "two inconsistent awards, both entitled to confirmation." Letter of Appellee 2 (June 30, 2009). Observing that nothing in the FAA or the ICDR Articles provides that an amended award *ipso facto* supercedes or invalidates an original award, Dempsey opines that both the original award and amended award are subject to confirmation unless modified or vacated under 9 U.S.C. §§ 10-11. If one party were to petition a court to confirm the original award, the court's ability to modify that award to reflect the changes in the amended award

23

would be strictly limited. *See, e.g., id.* § 11(a) (permitting modification to correct "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"). Therefore, if deference were due to an arbitrator's use of broader modification powers when issuing an amended award, a court might be unable to correspondingly modify the original award, while simultaneously lacking the ability to vacate the amended award as exceeding the arbitrator's powers. Permitting a scenario in which inconsistent awards might conceivably result, Dempsey contends, would undermine the FAA's policy of achieving a final and definite resolution of disputes.

While undoubtedly clever, this structural argument is ultimately unpersuasive. First, if the substance of an award is subsequently changed by a valid amended award, it stands to reason that the finality and import of the original award would be rendered sufficiently ambiguous that a court might justifiably resist confirming the original award, at least absent remand for clarification by the arbitrator. *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l Union, UAW*, 500 F.2d 921, 923 (2d Cir. 1974) ("Courts will not enforce an award that is incomplete, ambiguous, or contradictory."); *see also Trade & Transp., Inc.*, 931 F.2d at 195 (noting "the general rule that an arbitral determination is not final unless it conclusively decides every point required by and included in the submission of the parties"); *cf.* 9 U.S.C. § 10(a)(4) (permitting award to be vacated where arbitrators "so imperfectly executed the[ir powers] that a mutual, final, and definite award upon the subject matter submitted was not made"). In addition, Dempsey's argument carries the logical consequence of categorically precluding parties from assigning their arbitrators powers of reconsideration beyond those available to a court when vacating or modifying an arbitration award.

24

Such a result finds no support in the text of the FAA, and we see no reason for interpreting the statute as silently placing such significant constraints on the freedom of parties to bargain for the arbitral procedures of their choice. *Cf. Clark v. Martinez*, 543 U.S. 371, 380 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.").

Thus, Dempsey provides this Court no ground on which we could justify shirking our obligation to grant deference to the arbitrator's interpretation of the scope of ICDR Article 30(1). Given our conclusion that the parties intended to submit this question to the arbitrator, *First Options* dictates that we "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances," such as those outlined under 9 U.S.C. § 10(a)(4). *First Options*, 514 U.S. at 943. Ordinarily, our limited inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp.*, 304 F.3d at 220 (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997)) (internal quotation mark omitted); *accord Banco de Seguros del Estado*, 344 F.3d at 262. In other words, once we determine that the parties intended for the arbitration panel to decide a given issue, it follows that "the arbitration panel did not exceed its authority in deciding that issue—irrespective of whether it decided the issue correctly." *Stolt-Nielsen SA*, 548 F.3d at 101; *see also DiRussa*, 121 F.3d at 824 ("DiRussa's real objection appears to be that the arbitrators committed an obvious legal error in denying him attorney's fees. Section 10(a)(4) was not intended to apply to such a situation."). As our previous analysis demonstrates, the parties' arbitration agreement empowered the arbitrator to

25

determine for himself the scope of his reconsideration authority under ICDR Article 30(1). Therefore, even assuming that we viewed the arbitrator's construction of Article 30(1) to be erroneous—and we reach no such conclusion here—the Amended Award cannot be vacated under § 10(a)(4) merely on that ground.[10]

Because we conclude that the arbitrator did not exceed his powers by revising the Original Award in a way consistent with his interpretation of his reconsideration authority under ICDR Article 30(1), we reverse the district court's decision to vacate the Amended Award on § 10(a)(4) grounds. Moreover, given our holding that the arbitrator's revision of the Original Award must be upheld, we also vacate the district court's ruling confirming the Original Award. We remand with instructions that, upon application, the Amended Award should be confirmed.

---

[10] While in the wake of *Hall Street* we have construed manifest disregard to be an interpretive gloss on § 10(a)(4) and the other vacatur grounds listed in 9 U.S.C. § 10, *see Stolt-Nielsen SA*, 548 F.3d at 94-95, Dempsey did not invoke the manifest disregard doctrine before the district court, nor did it raise the argument on appeal. *Stolt-Nielsen* notes that arbitrators who conducts arbitrations that are "carried out in manifest disregard of the law" also "exceed[] their powers, or so imperfectly execute[] them that a mutual, final, and definite award upon the subject matter submitted [i]s not made." *See id.* at 95 (quoting 9 U.S.C. § 10(a)(4)) (internal quotation marks omitted). To the extent these two bases for challenging an arbitration award may differ, the manifest disregard issue has been forfeited here. *See Universal Church v. Geltzer*, 463 F.3d 218, 228-29 (2d Cir. 2006) (concluding that appellee was properly subjected to the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal" (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005)) (internal quotation mark omitted)); *United States v. Handakas*, 286 F.3d 92, 112 n.11 (2d Cir. 2002) (concluding that appellee had waived argument it failed to address in its initial appellate briefing), *overruled on other grounds by United States v. Rybicki*, 354 F.3d 124, 144 (2d Cir. 2003) (en banc); *United States v. Quiroz*, 22 F.3d 489, 490-91 (2d Cir. 1994) (per curiam) (same).

*Conclusion*

For the foregoing reasons, we hereby affirm in part, reverse in part, and vacate in part the judgment of the district court, and we remand for further proceedings consistent with this opinion.