11-5328-cv
Eatoni Ergonomics, Inc. v. Research in Motion Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of June, two thousand twelve.

PRESENT:  PIERRE N. LEVAL,
          REENA RAGGI,
          DENNY CHIN,
              *Circuit Judges*.

-------------------------------------------------------------------------------------

EATONI ERGONOMICS, INC.,
              *Plaintiff-Appellant*,

          v.                              No. 11-5328-cv

RESEARCH IN MOTION CORP., RESEARCH IN MOTION LTD.,
              *Defendants-Appellees*.

-------------------------------------------------------------------------------------

FOR APPELLANT:       ERIC W. BERRY, Berry Law PLLC, New York, New York.

FOR APPELLEES:       MICHAEL BECKER (Aaron Nielson, Peter Andrew Bellacosa, Linda S. DeBruin, Craig D. Leavell, *on the brief*), Kirkland & Ellis LLP, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 6, 2011, is AFFIRMED.

Plaintiff Eatoni Ergonomics, Inc. ("Eatoni") appeals from (1) the confirmation of a June 8, 2010 arbitration award for defendants Research in Motion Corp. and Research in Motion Ltd. (collectively, "RIM") on Eatoni's claims that RIM breached its obligations under an agreement settling litigation in the United States District Court for the Northern District of Texas relating to RIM's alleged infringement of Eatoni's patent for "reduced QWERTY" keyboard technology for cellular telephones; and (2) the dismissal of Eatoni's amended complaint against RIM for violation of § 2 of the Sherman Act, see 15 U.S.C. § 2, for failure to state a claim, see Fed. R. Civ. P. 12(b)(6). With respect to the confirmation of the arbitration award, we review the district court's legal rulings de novo and its findings of fact for clear error. See ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009). We review the dismissal of Eatoni's amended complaint de novo, accepting all well pleaded facts as true and drawing all reasonable inferences in Eatoni's favor. See Bigio v. Coca-Cola Co., 675 F.3d 163, 169 (2d Cir. 2012). We assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Arbitration Award

Eatoni contends that the district court erred in confirming the June 8, 2010 arbitration award. Specifically, Eatoni asserts that the arbitrator manifestly disregarded New York law when he rejected Eatoni's claim that RIM breached the parties' settlement agreement by not

2

engaging in a good faith effort jointly to develop with Eatoni a new reduced QWERTY keyboard technology that RIM would install in future mobile phone models.[1]  Eatoni concedes that the arbitrator stated New York's law of "good faith" correctly, but it asserts that the arbitrator made erroneous findings of fact and applied the law incorrectly, all of which warrant vacatur of the arbitration award.  We are not persuaded.

"A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, . . . as awards are vacated on manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks, citations, and brackets omitted).  Eatoni principally challenges the arbitrator's findings of fact that (1) RIM did not deceive Eatoni regarding its actual plans to develop reduced QWERTY keyboard technology with Eatoni; (2) RIM did not enter into an exclusive agreement with T-Mobile to build mobile telephones using reduced QWERTY keyboards developed without Eatoni; and (3) RIM's internal procedures, whereby engineers spend time developing a product idea before submitting it to the product management department for approval, were not unreasonable or irrational.

---

[1] RIM submits that we lack jurisdiction to review the district court's confirmation of the June 8, 2010 arbitration award because, in its notice of appeal, Eatoni specified that it was only appealing the judgment that dismissed Eatoni's amended complaint alleging § 2 violations.  But construing the notice of appeal liberally, see Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010), we understand Eatoni to appeal from the final judgment, which was entered after the amended complaint was dismissed, and to present for appellate review all of the previous interlocutory rulings encompassed by that final judgment, see Anobile v. Pelligrino, 303 F.3d 107, 115 (2d Cir. 2002).

3

Disagreement with an arbitrator's findings of fact, however, is insufficient to show the arbitrator's manifest disregard of the law. See Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 213–14 (2d Cir. 2002). Nor has Eatoni demonstrated that the award lacked any "barely colorable justification for the outcome reached." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d at 339 (internal quotation marks omitted) (emphasis in original). Under an objective definition of good faith, RIM did not act irrationally, arbitrarily, or dishonestly in deciding to abide by its standard internal procedures when reviewing the proposal put forward jointly by RIM and Eatoni engineers, and ultimately in declining to pursue the proposal based on a judgment that the mobile phones would not be commercially viable. See Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979–80 (1995) (stating that good faith encompasses promise "not to act arbitrarily or irrationally" or to deny other party's right "to receive the fruits of the contract" (internal quotation marks omitted)).

Because Eatoni failed to sustain its heavy burden to show that the arbitrator manifestly disregarded the law, we affirm the district court's confirmation of the June 8, 2010 award.

2.      Dismissal of Eatoni's Amended Complaint

Eatoni next seeks reinstatement of its amended complaint alleging § 2 claims that RIM (1) exercises monopoly power in the market for "QWERTY smartphone products," i.e., mobile phones using a traditional QWERTY keyboard rather than a traditional telephone keypad or touch screen, Appellant's Br. at 3; and (2) has acted anti-competitively to maintain that monopoly power by refusing to collaborate with Eatoni and infringing Eatoni's patent

4

for reduced QWERTY keyboard technology. See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 407 (2004); Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.), 585 F.3d 677, 686–87 (2d Cir. 2009). We assume, without deciding, that Eatoni adequately pleaded the first element of monopoly power. Nevertheless, we affirm the district court's dismissal of the amended complaint because Eatoni failed adequately to plead anti-competitive conduct by RIM in violation of the Sherman Act.

      a.     <u>Refusal To Deal</u>

Eatoni submits that it adequately alleged anti-competitive conduct in violation of § 2 in pleading that RIM refused to deal with Eatoni by rejecting the parties' jointly developed reduced QWERTY keyboard technology. We disagree.

Eatoni's attempt to analogize this case to Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985), is unpersuasive because Eatoni did not have a preexisting product, developed and sold in collaboration with RIM, which consumers preferred. See id. at 603, 605–07 (describing joint, profitable product that defendant unilaterally abandoned). At most, Eatoni and RIM had a contractual relationship "to jointly work on improvements in predictive text in ambiguous keyboards" and "to negotiate in good faith on any jointly-made improvements thereto." Settlement Agreement, Ex. A. Because the parties agreed only to collaborate in good faith prospectively, and had no previous course of dealing or antecedent product, much less one that consumers preferred or was profitable, Eatoni's refusal-to-deal allegations cannot satisfy the anti-competitive conduct requirement of a § 2

5

claim. See Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. at 409 (describing Aspen Skiing as case where "[t]he unilateral termination of a voluntary (and thus presumably profitable) course of dealing suggested a willingness to forsake short-term profits to achieve an anticompetitive end" (emphasis in original)); Transhorn, Ltd. v. United Techs. Co. (In re Elevator Antitrust Litig.), 502 F.3d 47, 53 (2d Cir. 2007) (limiting Aspen Skiing to cases where "a monopolist seeks to terminate a prior (voluntary) course of dealing with a competitor" and forsakes short-term profits to achieve anti-competitive end).[2]

Further, unlike in Aspen Skiing, here the arbitrator found that the defendant, through its good faith efforts, reached a legitimate business judgment that the parties' proposed reduced QWERTY model was not commercially viable. See Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. at 608–10 (describing defendant's inability to justify unilateral abandonment of joint product in favor of new product that was inferior and disfavored by consumers); see also Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko LLP, 540 U.S. at 409 (distinguishing Aspen Skiing as case where defendant's refusal to deal lacked any justification other than predatory motive to maintain or increase monopoly power). Eatoni is collaterally estopped from re-litigating the same issue in this litigation. See Bear, Stearns & Co. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (holding

---

[2] To the extent that Eatoni relies on Novell, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litigation), 699 F. Supp. 2d 730 (D. Md. 2010), rev'd in part on other grounds, 429 F. App'x 254 (4th Cir. 2011), as an example where the monopolist's refusal to create a new product was sufficient to establish a triable refusal-to-deal claim, Eatoni overlooks the Novell court's emphasis on the parties' decade-long history of mutually beneficial cooperation, see id. at 740, 746, a factor not present in this case.

6

that "[a]n arbitration decision may effect collateral estoppel . . . if the proponent can show with clarity and certainty that the same issues were resolved," and if it satisfies other elements of collateral estoppel (internal quotation marks omitted)). Thus, Eatoni's refusal-to-deal claim was properly dismissed. See Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86–87 (2d Cir. 2000) (holding that dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where it is "clear from the face of the complaint" that plaintiff's claims are precluded).[3]

   b.   Essential Facilities

Similarly deficient is Eatoni's amended pleading that RIM violated § 2 by denying it access to essential facilities, i.e., its QWERTY mobile phones. To state an essential-facility claim, Eatoni must allege "more than inconvenience, or even some economic loss"; it must allege "that an alternative to the facility is not feasible." Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 570 (2d Cir. 1990). Eatoni's amended complaint states that there are other competitor mobile phone producers capable of creating a reduced QWERTY keyboard model. Although RIM may exercise monopoly power and, therefore, may present a potentially more lucrative business partnership than its competitors, Eatoni's claim fails because the amended complaint does not plausibly assert that RIM is the only mobile phone manufacturer with which Eatoni feasibly can do business. See id.

---

   [3] Similarly, to the extent Eatoni advances a theory that RIM engaged in anti-competitive conduct by dealing deceptively with Eatoni, that claim is precluded by the arbitrator's findings that RIM acted in good faith and did not deceive Eatoni.

To the extent Eatoni argues that RIM's mobile phones offer the only platform compatible with its patented reduced QWERTY keyboard technology, we agree with the district court that § 2 does not obligate RIM to share its patented platform technology, from which RIM derives the lawful power to exclude others' use. See SCM Corp. v. Xerox Corp., 645 F.2d 1195, 1204 (2d Cir. 1981). Further, Eatoni's contention is belied by the amended complaint, which states that Eatoni has successfully applied its patent to a mobile phone platform other than RIM's. Thus, Eatoni's essential facilities claim fails to state a colorable claim for relief.

c.      Patent Infringement

Eatoni claims that RIM violated § 2 by infringing Eatoni's patent for its reduced QWERTY keyboard technology, which, it contends, was anti-competitive to the extent it "reinforce[d]" RIM's monopoly power by preventing Eatoni from competing in the QWERTY mobile phone market and by forcing Eatoni to engage in a costly campaign to police its patents. Appellant's Br. 23. Assuming, without deciding, that Eatoni can state a § 2 claim on the basis of RIM's alleged patent infringement, the claim is barred by the terms of the parties' settlement agreement.

First, insofar as Eatoni's § 2 claim derives from any patent infringement pre-dating the settlement with RIM, Eatoni retrospectively released all "claims . . . that were asserted or could have been asserted" in the Northern District of Texas litigation. Settlement Agreement, Ex. A. That includes any antitrust claim that was viable as of September 26, 2005, the date the litigation was settled. Second, Eatoni cannot bring an antitrust claim

8

premised on RIM's post-settlement patent infringement, because Eatoni prospectively

granted RIM "a royalty-free, fully paid-up, non-exclusive, irrevocable, worldwide license to

make, have made, use, . . . sell, . . . import or export RIM products covered by any present

or future patent or patent rights owned by and/or assigned to Eatoni or [Howard] Gutowitz,"

Eatoni's chief executive officer.  Id.

Accordingly, Eatoni fails to state a claim that RIM violated the Sherman Act by virtue

of infringing its patented reduced QWERTY keyboard technology.  Eatoni's patent

infringement § 2 claim was properly dismissed.

### d.    Course of Conduct

Eatoni alleges that RIM's overall course of conduct, i.e., its refusal to deal, deceptive

practices, denial of access to an essential facility, and patent infringement, cumulatively

establishes a § 2 violation.  Because these alleged instances of misconduct are not

independently anti-competitive, we conclude that they are not cumulatively anti-competitive

either.  See City of Groton v. Conn. Light & Power Co., 662 F.2d 921, 928–29 (2d Cir. 1981)

("[W]e reject the notion that if there is a fraction of validity to each of the basic claims and

the sum of the fractions is one or more, the plaintiffs have proved a violation of section 1 or

section 2 of the Sherman Act.").  We therefore reject Eatoni's course of conduct claim under

§ 2.

3.      Conclusion

   We have considered Eatoni's remaining arguments and conclude that they are without

merit.  The judgment of the district court is AFFIRMED.

                        FOR THE COURT:
                        CATHERINE O'HAGAN WOLFE, Clerk of Court